CNR:SAE
F.#2025R00257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -                          25-CR-174 (JS)

ANIBAL EDGARDO MEJIA GUZMAN,

          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN SUPPORT OF ITS MOTIONS IN LIMINE

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

Sarah A. Elardo
Special Assistant U.S. Attorney
(Of Counsel)

1

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

PRELIMINARY STATEMENT ........................................................................................... 5

RELEVANT FACTUAL BACKGROUND ........................................................................ 6

ARGUMENT ....................................................................................................................... 11

    I.      Evidence the Government Seeks to Admit Is Direct Evidence of the Charged Crimes, or, in the Alternative, Is Admissible Under Federal Rule of Evidence 404(b) to Show Motive, Opportunity, Intent, Preparation, Plan, Knowledge, Identity, Absence of Mistake or Lack of Accident ................................................................................................................. 11

        A.      Applicable Law .................................................................................... 11

            i.      Relevant Uncharged Acts Evidence is Admissible Under Federal Rules of Evidence 401 and 402 ..................................................................... 11

            ii.      Evidence of Uncharged Acts is also Admissible Under Federal Rule of Evidence 404(b) ........................................................................................ 12

            iii.      Federal Rule of Evidence 403's Balancing Test ........................ 14

    II.      The Defendant's Statements are Admissible as the Non-Hearsay Statements of a Party Opponent. ................................................................................................................... 18

            iv.      Applicable Law .................................................................................... 19

            v.      Discussion ............................................................................................ 20

    III.      The Defendant's Self-Serving Statements are Inadmissible. ...................................... 20

    IV.      The Court Should Preclude Any Evidence by Defendant to Elicit Sympathy ........... 23

    V.      The Court Should Preclude Evidence or Argument on the Government's Motives and Charging Decisions ............................................................................................................. 24

    VI.      The Court Should Preclude Evidence or Argument Concerning Possible Punishment and Collateral Consequences .......................................................................................... 26

    VII.  The Court Should Preclude the Defendant from Introducing Evidence or Argument that Attempts to Cast Aspersions on Immigration and Customs Enforcement (ICE). ............................... 28

    VII.      The Defendant Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During His Case-in-Chief ....................................................................... 29

CONCLUSION ................................................................................................................... 33

<u>TABLE OF AUTHORITIES</u>

United States v. Coonan,
 938 F.2d 1553 (2d Cir. 1991) ................................................................. 11
United States v. Robinson,
 702 F.3d 22 (2d Cir. 2012) ................................................................... 11
United States v. Del Rosario
2012 WL 2354245 (S.D.N.Y. June 14, 2012) ............................................ 27
United States v. Saldarriaga,
 204 F.3d ........................................................................................ 26
Shannon v. United States,
 512 U.S. 573 (1994) ........................................................................... 26
United States v. Aiyaswamy,
 No. 15-CR-568 (LHK), 2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) ............ 31
United States v. Armstrong,
 517 U.S. 456 (1996) ........................................................................... 25
United States v. Battaglia,
 Case No. 05-CR-774 (KMW), 2008 WL 144826 (S.D.N.Y. Jan. 15, 2008) ...... 23
United States v. Blume,
 967 F.2d 45 (2d. Cir. 1992) .................................................................. 26
United States v. Farhane,
 634 F.3d 127 (2d Cir. 2011) ................................................................. 25
United States v. Harris,
 491 F.3d 440 (D.C. Cir. 2007) .............................................................. 23
United States v. Holden,
 No. 13-CR-444 (AJB), 2015 WL 1514569 (D. Or. Mar 19, 2015) ................ 31
United States v. Hsia,
 No. 98-CR-57 (PLF), 2000 WL 195067 (D.D.C. Jan. 21, 2000) ............... 29, 30
United States v. Jadusingh,
 No. 18-CR-257 (KAM), 2020 WL 207950 (E.D.N.Y. Jan. 14, 2020) .............. 26
United States v. James,
 607 F. Supp. 3d 246 (E.D.N.Y. 2022) ..................................................... 27
United States v. Knox,
 687 F. App'x 51 (2d Cir. 2017) ............................................................. 24
United States v. Larkin,
 No. 12-CR-319 (GWF), 2015 WL 4415506 (D. Nev. July 20, 2015) .............. 31
United States v. Lewis,
 110 F.3d 417 (7th Cir. 1997) ................................................................ 26
United States v. Loera,
 No. 09-CR-466 (BMC), 2018 WL 2744701 (E.D.N.Y. June 7, 2018) ............. 25
United States v. Malpeso,
 115 F.3d 155 (2d Cir. 1997) ................................................................. 24
United States v. McDaniel,
 398 F.3d 540 (6th Cir. 2005) ................................................................ 30

United States v. Miller,
   641 F. Supp. 2d 161 (E.D.N.Y. 2009) ............................................................ 22, 23

United States v. Napout,
   No. 15-CR-252 (PKC), 2017 WL 6375729 (E.D.N.Y. Dec. 12, 2017) ................................ 30

United States v. Paccione,
   949 F.2d 1183 (2d Cir. 1991)............................................................................. 23

United States v. Reese,
   933 F. Supp. 2d 579 (S.D.N.Y. 2013).................................................................. 25

United States v. Regan,
   103 F.3d 1072 (2d Cir. 1997)............................................................................. 25

United States v. Rosado,
   728 F.2d 89 (2d Cir. 1984)................................................................................. 24

United States v. Smothers,
   No. 20-CR-213 (KAM), 2023 WL 348870 (E.D.N.Y. Jan. 20, 2023)............................ 30, 31

United States v. Stewart,
   No. 03-CR-717 (MGC), 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004) ................................ 25

United States v. Swenson,
   298 F.R.D. 474 (D. Idaho 2014) ........................................................................ 31

Williams v. Vahey,
   No. 20-CV-2560 (KAM), 2023 WL 130834 (E.D.N.Y. Jan. 8, 2023) ................................ 32

**Rules**

Fed. R. Crim. P. 16(b)(1)(A)............................................................................... 29

Fed. R. Crim. P. 26.2 ....................................................................................... 32

Federal Rule of Evidence 403 ....................................................................... 23, 24

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its

motions in limine in anticipation of trial, which is scheduled to begin on August 11, 2025. The

defendant Anibal Edgardo Mejia Guzman is charged via a single count indictment (the

"Indictment") with assault on a federal officer in violation of 18 U.S.C. § 111. In anticipation of

trial, the government respectfully requests that the Court:

1. admit the arrest warrant of intended ICE target—which was in the possession of law enforcement prior to the detention and arrest of the defendant—as direct evidence to provide context to the government's charges, or, in the alternative, under Rule 404(b);

2. admit evidence regarding defendant's immigration status and prior criminal convictions as direct evidence to prove the defendant's intent, or, in the alternative, under Rule 404(b);

3. permit the government to introduce non-hearsay statements and admissions made by the defendant as direct evidence and preclude the defendant from introducing inadmissible self-serving statements;

4. preclude the defendant from introducing lines of inquiry or argument encouraging or fostering jury nullification, such as (1) addressing possible punishment and collateral consequences; (2) purposed motivation for investigating and charging the defendant; (3) casting negative aspersions on ICE based on political beliefs; and (4) lines of inquiry geared towards invoking evidence to elicit sympathy; and

5. order the defendant to disclose his Rule 16(b) discovery and trial exhibits to be introduced during the government's case.

For the reasons set forth below, the Court should grant the government's motions in limine

in their entirety[1].  Alternatively, the government provides the following information to apprise the

_____

[1] This memorandum cannot anticipate every type of evidence and testimony that will be offered at trial and does not detail all the specific testimony the government will elicit at trial. The government respectfully requests to reserve its right to supplement this filing with additional papers setting forth legal authority for the introduction of evidence and/or additional motions in

Court of evidentiary issues it anticipates will arise during trial so that the Court is prepared to reserve decision and rule when appropriate.

## RELEVANT FACTUAL BACKGROUND

On April 11, 2025, Deportation Officers were present outside of 285 Belmont Avenue, West Hempstead, New York 11552, conducting physical surveillance in order to make an administrative arrest of an intended ICE target, pursuant to a lawful Immigration Court removal order. In preparation for the operation, the officers possessed information and relied on the following: (1) the name of the subject- Yerson Jocsan Azmavet Martinez-Alvarado; (2) the target's known residence-285 Belmont Avenue, West Hempstead, New York 11552; (3) the height and weight of the target- 5'10", 160 pounds; (4) the gender of the individual- male; (5) the race of the individual-white; (6) the age of the individual-27; and (7) the individual's prior criminal history.[2]

At approximately 7:20 a.m., officers observed the defendant, Anibal Edgardo Mejia Guzman, whose appearance matched the physical description of the subject, exit the Belmont residence and enter a Toyota Tacoma bearing a Maryland license plate number 9FC4703. Shortly thereafter the defendant, Anibal Edgardo Mejia Guzman drove away from the Belmont residence, wherein officers conducted a vehicle stop in front of 143 Broadway, West Hempstead, New York 11552. The defendant was the sole occupant of the vehicle.

ICE-ERO Deportation Officer John Dickerson and DHS Special Agent Joshua Abbensetts approached the defendant's vehicle, wearing clearly identifiable police placards on

---

limine as legal issues are identified closer to trial, the government interviews potential witnesses, or in response to any objection by defense to the introduction of evidence.

[2] The individual was convicted on illegal entry in violation of 8 U.S.C. section 1325 on or about January 25, 2019.  On or about January 8, 2025, Alvarado was arrested for strangulation in the second degree and other related charges.

their outer garments. Deportation Officer Dickerson and Special Agent Abbensetts verbally announced themselves as law enforcement, and requested the defendant roll his window down. The defendant refused to make eye contact with officers, did not respond, nor did he follow the officers' lawful commands to open his window[3]. Upon the defendant's failure to comply with his lawful commands, Deportation Officer Dickerson and Special Agent Abbensetts once again identified themselves as law enforcement Deportation Officer Dickerson opened the driver's side door of the vehicle. While Deportation Officer Dickerson was opening the door, the defendant forcibly grabbed Deportation Officer Dickerson's arm. Deportation Officer Dickerson and Special Agent Abbensetts announced themselves yet again and ordered the defendant to stop resisting and exit the vehicle. Special Agent Abbensetts then observed the defendant put his foot on the break of the vehicle, grab the gear of the vehicle, and attempt to put the vehicle in reverse. Special Agent Abbensetts turned the vehicle off prior to the defendant putting the vehicle in reverse. The defendant continued to physically resist the officers and failed to comply with their lawful commands. In the course of physically resisting officers, the defendant struck Deportation Officer Dickerson in the mouth with his elbow, causing Deportation Officer Dickerson to sustain a swollen and bloody lip.

       Special Agent Abbensetts observed a utility knife clipped to the defendant's front-right-side pants pocket. When Special Agent Abbensetts attempted to remove and secure the knife, the defendant fought with Special Agent Abbensetts to maintain control over possession of the utility knife. While the defendant tried to pull the utility knife from Special Agent Abbensetts, Deportation Officer Dickerson used his service issued taser to incapacitate the defendant, but was

---

[3] Pursuant to New York State Vehicle and Traffic Law Section 401, drivers are required to provide their driver's license, registration, and proof of insurance upon request to a magistrate, motor vehicle inspector, peace officer acting under special duties, or police officer when operating a motor vehicle on a public highway.

unsuccessful. Ultimately, Special Agent Abbensetts retrieved the utility knife from the defendant. After several minutes, the defendant was removed from the vehicle, handcuffed, and placed under arrest[4].

While searching the defendant incident to his arrest, officers recovered a Honduran identification card bearing the defendant's name, date of birth, and other identifiers. According to law enforcement databases, at the time of the defendant's arrest, the defendant was illegally present in the United States after having previously been required to leave the United States for his home country of Honduras, after immigration proceedings in 2010.

I.    Defendant's Post-Arrest Statement

Following his arrest, the defendant was transported back to Immigration and Customs Enforcement offices, located in Central Islip, New York for processing. Deportation Officer Efran Olivencia read the defendant his Miranda rights in Spanish, which is the language the defendant speaks and understands. Thereafter, the defendant waived his Miranda rights, answered questions, and said answers were memorialized on a form by Deportation Officer Olivencia. The defendant thereafter signed the written statements, attesting to their accuracy. The defendant made the following statements:

> My name is Anibal Edgardo Mejia Guzman. I do not have any other names. I was born in La Encarnacion, Honduras. I am a citizen of Honduras. My passport is issued by consulate of Honduras. My date of birth is June 6, 1978.  I do not remember when I last entered the United States. I do not remember the place where I last entered the United States. I last entered the United States illegally through the United States Mexico border. I am currently illegally present in the United States. I obtained the status by crossing the border illegally. I do not have any applications pending before Immigration. I have been apprehended by Immigration. I have been ordered to an Immigration hearing, deported, excluded or removed from the United States. After I was ordered deported, excluded or

---

[4] The government does not anticipate on calling "Deportation Officer-2" to testify as identified in the indictment. The government will update and file their trial indictment accordingly.

removed, I was removed by Immigration or left voluntarily from the United States. I have never applied to the Attorney General of the United States for permission to re-enter the United States after I was deported, excluded or removed from the United States. I fear of persecution or torture should I be removed from the United States. I am 5'8" and 175 pounds. I do not have any scars or tattoos. I do not have a spouse present in the United States. I have two children: Kimberly Guzman and Belinda Mejia. My mother's name is Gladys Jobita Guatemala Guzman. My mother is Honduran, no status in the United States. My father is deceased. My father's name is Jose Humberto Mejia. My father was Honduran with no status in the United States. I have one brother who lives in the United States. None of my immediate family members have applications pending with Immigration. I am in good health. I am unemployed. My previous employment was contracting. I do not own property. I have been arrested previously. I do not remember when and where. I have two DWI convictions in Nassau County.[5] I was convicted. I am not nor have I ever been in the United States Military. I understand all the questions. I will like to be able to remain in the United States to take care of my daughters. I have worked hard in this country. I have paid my taxes.

On May 1, 2025, the defendant was arrested on a complaint and appeared before the Honorable Steven I. Locke, United States Magistrate Judge, and was detained pending resolution of the charges. On May 21, 2025, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of assault on a federal officer, in violation of 18 U.S.C. §§ 111(a)(1) and 111(b). As alleged in the indictment, on April 11, 2025, the defendant did knowingly and intentionally forcibly assault, resist, oppose, impede, intimidate and interfere with two United States Immigration and Customs Enforcement, Enforcement and

---

[5] The defendant has prior criminal contacts. For various reasons, as fully outlined herein, the government will seek to offer evidence of the following arrests and convictions at trial. On January 22, 2006, the defendant was arrested in Nassau County and charged with Operating a motor vehicle with .08 of 1% of alcohol or more in blood, in violation of VTL 1192(2). On March 20, 2006, the defendant pled guilty to driving while ability is impaired by the consumption of alcohol in violation of VTL 1192(1). On that same day he was sentenced to a conditional discharge, a license suspension for a period of 90 days and a fee. On July 11, 2010, the defendant was arrested for driving while intoxicated, in violation of VTL 1192(3). ON July 29, 2010, the defendant was convicted of driving while intoxicated, in violation of VTL 1192(3). On that same day, he was sentenced to 30 days jail, and a $500 fine.

Removal Operations Deportation Officers and one Homeland Security Investigations Special Agent, while such officers were engaged in the performance of official duties, and such act involved physical contact with said deportation officers, which inflicted bodily injury to a Deportation Officer. On May 28, 2025, Your Honor arraigned the defendant on the indictment and set the case down for jury selection and trial on August 11, 2025.

<u>ARGUMENT</u>

I.    <u>Evidence the Government Seeks to Admit Is Direct Evidence of the Charged Crimes, or,</u>
<u>in the Alternative, Is Admissible Under Federal Rule of Evidence 404(b) to Show</u>
<u>Motive, Opportunity, Intent, Preparation, Plan, Knowledge, Identity, Absence of Mistake</u>
<u>or Lack of Accident</u>

The government seeks to introduce direct evidence of the following uncharged acts, which are inextricably intertwined with the charged offense. In particular, the government seeks to show that (1) law enforcement was at the location in order to make a lawful administrative arrest, of an illegal alien present in the United States; (2) that the defendant was in the United States illegally at the time of the encounter with law enforcement officers; and (3) the defendant has two previous DWI convictions. The circumstances surrounding law enforcement officers lawful presence, the defendant's illegal immigration status, and the defendant's prior criminal convictions are relevant, probative and admissible.

A.    <u>Applicable Law</u>

i.    <u>Relevant Uncharged Acts Evidence is Admissible Under Federal</u>
<u>Rules of Evidence 401 and 402</u>

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 402, in turn, provides: "All relevant evidence is admissible, except as otherwise provided . . . ."

Direct evidence is "not confined to that which directly establishes an element of the crime." <u>United States v. Gonzalez</u>, 110 F.3d 941, 942 (2d Cir. 1997). As the Second Circuit has explained, "[t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." <u>Id.</u>; <u>accord</u> <u>United States v. Coonan</u>, 938 F.2d 1553, 1561 (2d Cir. 1991). The Second Circuit has

repeatedly held that actions and statements are admissible as direct evidence of the crimes charged, and are "not considered other crimes evidence under" Federal Rule of Evidence 404(b), if (a) they "arose out of the same transaction or series of transactions as the charged offense," (b) they are "inextricably intertwined with the evidence regarding the charged offense," or (c) they are "necessary to complete the story of the crime on trial." United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); see also United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007); United States v. Baez, 349 F.3d 90, 93-94 (2d Cir. 2003). In such circumstances, the uncharged crimes evidence is "appropriately treated as part of the very act charged, or, at least, proof of that act." United States v. Quinones, 511 F.3d at 309 (internal citations and quotations marks omitted).

The Second Circuit has repeatedly upheld the admission of uncharged act evidence as direct evidence of the charged crimes where such evidence provides necessary background or context for the charged crimes. See, e.g., United States v. Robinson, 702 F.3d 22, 37 (2d Cir. 2012) (in a sex trafficking case, "evidence that [the defendant] was in the prostitution business and controlled prostitutes other than Jane Doe was. . . 'necessary to complete the story of the crime on trial.'"). In this respect, "trial court[s] may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment. Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991) (quoting United States v. Daly, 842 F.2d 1380, 1388 (2d Cir. 1988)).

   ii. Evidence of Uncharged Acts is also Admissible Under Federal Rule of Evidence 404(b)

In the alternative, to the extent the Court finds that the evidence described above constitutes "other acts" under Federal Rule of Evidence 404(b), it is admissible for the non-propensity purposes of completing the narrative to the jury to explain the officer's initial presence at the location, and to show the defendant's intent, motive and lack of mistake during his encounter with law enforcement officers on April 11, 2025.  Under this Rule,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The Second Circuit has emphasized that Fed. R. of Evid. 404(b) is a rule of broad reach and liberal application.  United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible.").  Indeed, the Second Circuit has long interpreted Rule 404(b) as an inclusive rule allowing the admission of relevant "other acts" evidence if the evidence is offered to prove something other than criminal propensity and if it passes the balancing test required by Fed. R. of Evid. 403.  See United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); United States v. Stevens, 83 F.3d 60, 68 (2d Cir. 1996) ("this Circuit takes an inclusive approach to prior bad act testimony: such testimony can be admitted for any purpose except to show criminal propensity"); United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998) ("it can be admitted for any purpose except to show criminal propensity, unless the trial judge concludes that its probative value is substantially outweighed by its potential for unfair prejudice") (quoting Stevens, 83 F.3d at 68).  It is well settled that other act evidence is admissible under Rule 404(b) "to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between the participants in the crime

13

developed." United States v. Williams, 205 F.3d 23, 33-34 (2d Cir. 2000) (citing United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992)).  "On this basis, the trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.  Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." United States v. Ashburn, 11-CR-303, 2015 WL 588704, at *10 (E.D.N.Y. Feb. 11, 2015) (Garaufis, J.) (internal quotation marks and citations omitted).  Further, "to be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."  Id. at *11 (internal quotation marks and citations omitted).

Thus, to the extent evidence of prior acts is not direct evidence of the charged crimes, it remains admissible under Rule 404(b) if it is: (1) advanced for a proper purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2); (2) relevant to the crimes for which the defendant is on trial; (3) more probative than prejudicial; and (4) admitted subject to a limiting instruction, if such an instruction is requested.  See United States v. Zackson, 12 F.3d 1178, 1182 (2d Cir. 1993); United States v. Ramirez, 894 F.2d 565, 568 (2d Cir. 1990) (citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Where uncharged crimes are similar in nature to the crimes charged and not more inflammatory, as they are here, Rule 404(b) evidence is generally admissible under the Rule 403 balancing test, as described below.  See United States v. Paulino, 445 F.3d 211, 233 (2d Cir. 2006).

iii.    Federal Rule of Evidence 403's Balancing Test

14

Whether admitted as direct evidence or pursuant to Rule 404(b), the offered evidence remains subject to Federal Rule of Evidence 403.  The Court must therefore determine whether the probative value of the offered evidence is "substantially outweighed" by a danger of "unfair prejudice" or confusion.  Fed. R. Evid. 403.  The Second Circuit has found admission appropriate where the offered evidence "'did not involve conduct any more sensational or disturbing than the crimes with which [the defendants were] charged.'"  United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting United States v. Roldan-Zapata, 916 F.2d at 804).  Generally speaking, "any proof highly probative of guilt is prejudicial to the interests of that defendant.  The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'"  United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting United States v. Figueroa, 618 F.2d 934, 943 (2d Cir. 1980)).  To the extent there is any risk of unfair prejudice from otherwise probative evidence, the Court may provide limiting instructions to remind the jury that the defendant is not on trial for any offense other than the crimes charged.  See United States v. Tussa, 816 F.2d 58, 68 (2d Cir. 1987) (limiting instruction sufficient to preclude prejudice to defendant); see generally Parker v. Randolph, 442 U.S. 62, 75 n.7 (1979) ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions.").[6]

A.    Discussion

i.    The Government intends to introduce direct evidence that law enforcement was lawfully present at the location to make an administrative arrest of an

---

[6]    The government would, of course, expect the Court to issue an appropriate limiting instruction to the jury about the uncharged acts and prior convictions discussed herein.

intended target, as it provides necessary context for the jury of the charged conduct.

The government has the burden to prove that at the time of the charged conduct, the officers were engaged in official lawful duties. Therefore, this information is necessary to provide background, context, and complete the narrative for the jury. The government intends to introduce direct evidence that, pursuant to the administrative removal order for Yerson Jocsan Azmavet, law enforcement officers were lawfully present on April 11, 2025, while engaging in official duties. It is for the jury to decide whether the defendant knowingly resisted officers while they were engaged in, and on account of, the performance of their official duties. Therefore, it is necessary that the jury is provided context and a complete narrative of why officers were at the location in the first place. The probative value of the explanation for the officers' presence substantially outweighs the danger of any unfair prejudice, confusion of the issues, or misleading the jury; rather, it would clarify the events for the jurors.  The potential argument that any danger of prejudicial impact of evidence of an arrest of another individual would outweigh any probative value to be obtained from the evidence is unwarranted. If anything, the defendant's conduct could be viewed more positively as an arrest warrant was not ordered for the defendant. Overall, the evidence of the conduct of their intended target, Yerson Jocsan Azmavet provides necessary context, and its probative value substantially outweighs any prejudicial effect. Accordingly, the information surrounding law enforcement officers' initial presence should be allowed in.

ii.  The government intends to introduce evidence of the defendant's immigration status as it goes to his state of mind at the time of the encounter.

The government intends to offer evidence in their case in chief regarding the defendant's immigration status. The government anticipates that the defendant will argue the

16

information surrounding the defendant's immigration status is prejudicial; however, the information goes to the defendant's motive and intent at the time of the encounter with law enforcement officers. The government has the burden to prove the defendant knowingly and intentionally resisted the officers. The defendant's illegal presence in the United States is essential in providing insight to the defendant's mental state at the time he originally encountered officers. On April 11, 2025, the defendant knew he was illegally present in the United States; therefore, he had a reason to disobey and resist officers. The defendant knowingly acted with disobedience and resistance because he knew that if he identified himself to officers, there was a chance of deportation. Therefore, the information is necessary to prove the defendant's knowledge and/or intent, which is directly at issue in this case. As the offered evidence is material to issue in this case, the evidence is substantially more probative than prejudicial. Accordingly, the evidence of the defendant's immigration status should be admissible.

      iii.   <u>The defendant's prior convictions for DWI are admissible as prior bad acts to prove his knowledge, motive and intent.</u>

The Government intends to introduce direct evidence of the defendant's prior DWI convictions for the purpose of proving the defendant's intent at the time of the charged offense on April 11, 2025.

As previously stated above, the defendant has two prior DWI related convictions. On March 20, 2006, the defendant pled guilty to driving while ability is impaired by the consumption of alcohol in violation of NYS VTL 1192(1).  On July 29, 2010, the defendant was convicted of driving while intoxicated, in violation of VTL 1192(3).  The defendant's prior convictions, though remote, are directly relevant to the charged crime, are similar in nature, and the probative value of the evidence is substantially outweighed by any unfair prejudice.

The defendant's prior convictions while driving a vehicle are directly relevant to the

charged conduct at issue in this case. First, the convictions are evidence of the fact that the defendant is knowledgeable of his general obligations as a legal driver. Further, he is aware of the consequences that follow when disobeying the laws of the road. Despite the defendant's knowledge of the consequences of disobeying the law, the defendant deliberately acted to disobey, resist and impede the law on April 11, 2025. The government anticipates the defendant may argue the remoteness of the convictions make them prejudicial in nature; however, the convictions are relevant to show the defendant's prior pattern of knowledge of his obligations as a driver; and would not cause undue delay or a waste of time if admissible for that sole purpose. See United States v. Wager, 641 F. Supp. 3d 594 (2023) (although prior acts of defendant sexually abusing two minor females was somewhat remote in time, the prior-act evidence involved similar pattern of conduct against similar kind of victim and was not inherently any more inflammatory than charged crime, and presentation of evidence would not cause undue delay or waste of time). Accordingly, as the evidence, and the defendant's knowledge of the role of the law at the time of the charged offense on April 11, 2025, the previous convictions should be admitted for that limited purpose.

II.    The Defendant's Statements are Admissible as the Non-Hearsay Statements of a Party Opponent.

On April 11, 2025, the defendant knowingly and voluntarily waived his Miranda rights and stated, in sum and relevant part, the following statements: (1) the defendant confirmed his name and date of birth; (2) admitted to illegally entering in the United States; (3) admitted to being a Honduran citizen; (4) and admitted to having no legal status in the United States; and (5)

admitted to having prior DWI convictions. The above-mentioned statements are admissible as the non-hearsay statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A).

      iv.  <u>Applicable Law</u>

Pursuant to Federal Rule of Evidence 801(d)(2)(A), a statement that is offered against a party opponent and that was made by that party in an individual capacity is not hearsay. "Statements made by the defendant," where relevant, "may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." <u>United States v. Russo</u>, 302 F.3d 37, 43 (2d Cir. 2002); <u>see</u> <u>also</u> <u>United States v. Marin</u>, 669 F.2d 73, 84 (2d Cir. 1982) ("a party's own statement, if offered against him, is not hearsay."); <u>United States v. Gotti</u>, 457 F. Supp. 2d 395, 397 (S.D.N.Y. 2006).  Statements made by a defendant are generally admissible "regardless of whether such statements were against his interest when made." <u>Id.</u>

Moreover, statements made by other parties during conversations with a party opponent may be admitted "as necessary context [for the statements by the party-opponent] and not for their truth." <u>United States v. Guang Ju Lin</u>, 505 F. App'x 10, 13 (2d Cir. Dec. 10, 2012); <u>see also</u> <u>United States v. Dupre</u>, 462 F.3d 131, 136-37 (2d Cir. 2006) (allowing admission of emails sent by third parties to defendants, as context for defendants' responses); <u>Arista Records LLC v. Lime Group LLC</u>, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) ("Where a statement is deemed admissible as an admission by a party-opponent under Rule 801(d)(2), the surrounding statements providing essential context may also be considered.").  <u>See also</u> <u>United States v. Mojica</u>, No. 19-CR-280 (RA), 2021 WL 982458, *6 (S.D.N.Y. Mar. 16, 2021) (records of [defendant's] calls from jail …. are themselves admissible as non-hearsay party-opponent statements, [per] Fed. R. Evid. 801(d)(2) …").

v.  Discussion

The defendant was read his <u>Miranda</u> rights in Spanish on April 11, 2025. Thereafter, the defendant voluntarily waived his <u>Miranda</u> rights. He then answered questions, admitting, in sum and relevant parts, to the following: (1) his name and date of birth, (2) he is a citizen of Honduras; (3) he crossed the border illegally, (4) he has no lawful status in the United States, and (5) he has previous DWI convictions from Nassau, County. These statements are essential in proving the intent of the defendant at the time he knowingly resisted the officers during their official duties. The statements are essential in proving the defendant's knowledge and intent to impede officers' lawful duties on April 11, 2025, in an effort to evade arrest. The defendant, who admitted to the above-mentioned information, knew that if he were arrested, the information would have adverse effects, leading to possible deportation. Further, the statements go towards the defendant motive and intent at the time of the stop. Because the defendant knew he was illegally present in the United States and had previous DWI convictions, he knowingly resisted and impeded officers' official duties. The statements are inextricably intertwined to the charged conduct. These statements are admissible at trial.

III.  <u>The Defendant's Self-Serving Statements are Inadmissible.</u>

The defendant should be precluded from introducing his own self-serving hearsay statements through the cross-examination of a government witness, even if the government elicits testimony from that witness about the defendant's inculpatory statements. As offered by the defendant, these self-serving statements are inadmissible hearsay. To the extent the defendant intends to offer any statements under the "rule of completeness"—a highly limited doctrine described below- he should explain in advance of trial why those statements are covered by that doctrine.

At trial, the government may seek to introduce into evidence a redacted version of the defendant's written statements, which is attached both in redacted and unredacted form. Accordingly, the government seeks to exclude both oral and written statements from the defendant that invoke sympathy, such as defendant's statements to Deportation Officer Olivencia wherein the defendant stated, in sum and substance, "I will like to be able to remain in the United States to take care of my daughters. I have worked hard in this country. I have paid my taxes."

It is well established that the defendant's own statements, when offered by him are hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). "Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Acts of Congress." Fed. R. Evid. 801.  Therefore, a defendant is generally prohibited from introducing his own out-of-court, exculpatory statements at trial See, e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statements for the truth of the matter asserted, it is hearsay, and it is not admissible.").  In general, a defendant may not "attempt to get his side of the . . . story in front of the jury without himself testifying and opening himself up to cross-examination." United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004); see also United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of defendant's recorded statement to admit discrete inculpatory statements and excluding self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793 (2d Cir. 2007) (holding that court properly bifurcated defendant's post arrest statement and precluded defense from introducing self-serving portion of defendant's post-arrest statement).

The government, however, may introduce the defendant's statements because, when introduced by the government, the statements are not hearsay.  A statement is not hearsay if it is "offered against a party and is [] the party's own statement."  Fed. R. Evid. 801(d)(2)(A). Therefore, the government may clearly introduce the statements listed above.

In some limited instances, pursuant to the "rule of completeness," the government's decision to introduce a defendant's out-of-court statements will result in the defendant being permitted to introduce his own statements that would otherwise be excluded.  The Second Circuit has explained that the rule of completeness requires a "statement be admitted in its entirety when this is necessary to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact, or to ensure a fair and impartial understanding of the admitted portion." Marin, 669 F.2d at 84 (citations and quotation marks omitted).

It is well established, however, that the rule of completeness applies only if admitting the entire statement is necessary to avoid confusion-a circumstance that does not exist here.  As the Second Circuit has explained, "[t]he completeness doctrine does not [] require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." Id.  Thus, a defendant may not rely on the rule of completeness to put his out-of-court exculpatory statements before the jury through the testimony of another witness . . . , while at the same time maintaining his own Fifth Amendment privilege so as to avoid being cross-examined about his prior statements." United States v. Harper, No. 05-CR-6068, 2009 WLD 140125, at *5 (W.D.N.Y. Jan. 20, 2009).  Here, the defendant's inculpatory statements that the government seeks to admit are not confusing, and the defendant's statements that he is a citizen of Honduras, that he is illegally present in the United States, and that he has previous DWI convictions are very clear on their own. No additional statements made by the defendant are necessary to explain the

statements the government seeks to introduce.  Thus, the rule of completeness does not require their admission.  See United States v. Lumiere, 249 F. Supp. 3d 748, 758 (S.D.N.Y. 2017) (declining to introduce additional statements by the defendant in a recording under the rule of completeness because "they represented [the defendant's] self-serving attempts to shoehorn after-the-fact justifications for his actions into his descriptions of his actions") (alteration, citation and internal quotation marks omitted).

## IV.    The Court Should Preclude Any Evidence by Defendant to Elicit Sympathy

The defendant should be precluded from commenting, introducing, or eliciting any evidence that seeks to elicit sympathy from the jury including, but not limited to, evidence concerning his personal or family circumstances.

"District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice." United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009).  Additionally, courts have discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, Adv. Comm. Notes.  Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses." Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that the defendant had son with cerebral palsy); United States v. Battaglia, Case No. 05-CR-774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged"); United States v. Harris, 491 F.3d 440, 447

(D.C. Cir. 2007) (affirming preclusion of evidence designed "mainly to cast [the defendant] in the sympathetic light of a dedicated family man").

Apart from the evidence of the defendant's children who are present in the United States as described above, it is unclear what, if any, evidence the defendant may seek to introduce concerning his personal or family circumstances. In any event, evidence of the defendant's personal hardships, including purported family status, has no tendency to make any "facts of consequence" in this case more or less probable and thus should be excluded. Such topics simply have no bearing on whether the defendant committed the charged crimes. Any evidence relating to these topics is irrelevant and, therefore, inadmissible.

Even assuming, arguendo, that the defendant's personal hardships, health, or family status had some limited probative value, that value would be far outweighed by the danger of unfair prejudice to the government and juror confusion. Rather, the clear purpose for introducing evidence of these details would be to elicit sympathy for the defendant, distract from the facts at issue, and invite the jury to look past the defendant's conduct in this case. This sort of emotional appeal to the jury's sympathy should be excluded under Rule 403. See United States v. Malpeso, 115 F.3d 155, 162-63 (2d Cir. 1997) (excluding evidence and precluding argument on issues that had "little or no relevance" to the charged crimes and might encourage jury nullification); Fed. R. Evid. 403, Adv. Comm. Notes (stating that exclusion is appropriate where evidence creates "risks which range all the way from inducing decision on a purely emotional basis, at one extreme, to nothing more harmful than merely wasting time, at the other extreme").

V.    The Court Should Preclude Evidence or Argument on the Government's Motives and Charging Decisions

24

The defendant and his counsel should also be precluded from introducing evidence or making arguments before the jury regarding the government's motives and charging decisions. Such evidence and argument are irrelevant to innocence or guilt and present a substantial risk of misleading the jury or inviting jury nullification. They should be categorically precluded.

Courts have consistently held—and often give jury instructions reflecting—that arguments regarding the government's decisions during an investigation and its motives and timing in bringing charges are irrelevant, unduly prejudicial and improperly invite jury nullification. See, e.g., United States v. Knox, 687 F. App'x 51 (2d Cir. 2017) (instructing jury that "government is not on trial" is "appropriate"); United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"). That is so because a claim that a prosecution has been brought selectively, or for improper motives, "is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). "Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997).

Courts consistently preclude defendants from argument related to the government's motives and charging decisions, including arguments that a defendant was improperly targeted. See, e.g., United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011)

(affirming district court's ruling precluding defendant from arguing in summation that government had improperly targeted him for prosecution); United States v. Loera, No. 09-CR-466 (BMC), 2018 WL 2744701, at *6 (E.D.N.Y. June 7, 2018) ("[S]elective-prosecution argument by defendant to the jury would . . . be improper."); United States v. Webb, No. 15-CR-252 (PKC), ECF No. 1275, Trial Transcript at 3630:09-3632:12  (E.D.N.Y. Dec. 11, 2017) ("making argument in the vein of selective prosecution or the government's motive in conducting its investigation; for example, not getting certain evidence or pursuing certain leads and potentially focusing on certain defendants is . . . inappropriate" at trial); United States v. Reese, 933 F. Supp. 2d 579, 583-84 (S.D.N.Y. 2013) ("[A] defendant may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case."); United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (precluding defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]").  The Court should do the same here.

Ultimately, the jury's attention belongs on "the evidence or lack of evidence that had been presented at trial," not on the government's purported motives or charging decisions. See United States v. Saldarriaga, 204 F.3d 50, 52 (2d. Cir. 2000) Evidence concerning such matters is irrelevant, and introduction of evidence or argument concerning the motives behind the government's investigation would present an unacceptable risk of confusing the issues and misleading the jury.

VI.    The Court Should Preclude Evidence or Argument Concerning Possible Punishment and Collateral Consequences

The defendant likewise should be precluded from offering evidence or argument concerning the punishment or consequences he faces if convicted. Such argument or evidence is irrelevant and therefore inadmissible.

Where the jury has no role at sentencing—such as in this case—it "should be admonished to reach its verdict without regard to what sentence might be imposed." Shannon v. United States, 512 U.S. 573, 579 (1994). This is for good reason: argument concerning punishment "invites [jurors] to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." Id. Ultimately, any reference during trial to possible punishment may only "prejudice, distract, or confuse the jury." United States v. Jadusingh, No. 18-CR-257 (KAM), 2020 WL 207950, at *3 (E.D.N.Y. Jan. 14, 2020). Accordingly, "[f]ederal courts usually instruct juries not to consider a verdict's consequences." United States v. Blume, 967 F.2d 45, 49 (2d. Cir. 1992); see United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997) (holding that district court correctly refused to permit defendant to argue about the severity of his possible punishment). The same principles apply to the politically sensitive topic of immigration, and any discussion of impact on the defendant's immigration status could unfairly prejudice either party. Guilt should determine punishment, not the other way around. See United States v. Del Rosario, No. 12-CR-81 (KBF), 2012 WL 2354245, at *2 (S.D.N.Y. June 14, 2012) ("The only possible basis upon which defendant could seek to introduce evidence of punishment (including deportation) is to focus the jury on something other than whether the elements of the crime charged have been proven beyond a reasonable doubt.").

Although the defendant has not stated his intention to reference the possible consequences of his conviction at trial, the government moves to preclude any mention of

sentence and collateral consequences out of an abundance of caution. Any reference to sentencing and collateral consequences will serve to confuse the jury, undermine its role as the trier of fact, and invite nullification.

VII.   The Court Should Preclude the Defendant from Introducing Evidence or Argument that Attempts to Cast Aspersions on Immigration and Customs Enforcement (ICE).

        The defendant and his counsel should likewise be precluded from introducing evidence or making arguments before the jury that attempt to shift the blame for the defendant's conduct to the government or otherwise cast aspersions on ICE. This argument "is nothing more than a Trojan horse carrying an impermissible victim blaming defense," and thus should be precluded under Rules 401, 402, and 403. United States v. James, 607 F. Supp. 3d 246, 255 (E.D.N.Y. 2022).

        The Federal Rules of Evidence define "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probably or less probable than it would be without the evidence." Fed. R. Evid. 401. The rules then provide "[a]ll relevant evidence is admissible, except as otherwise provided by the constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority." Fed. R. Evid. 402. Rule 403, however, does provide a limitation on the admissibility of relevant evidence, permitting the Court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

        Allowing argument or outside opinions on Immigration and Customs Enforcement ("ICE") overall would only serve to mislead the jury, shift blame, and confuse the

issues in this case and would be "nothing more than a Trojan horse carrying an impermissible victim blaming defense," and thus would be precluded under Rules 401, 402 and 403. United States v. James, 607 F. Supp. 3d 246, 255 (E.D.N.Y. 2022). The defendant was charged with assault on a federal officer based on his actions on April 11, 2025. Any additional attempt to cast aspersions regarding ICE would only serve to shift blame and ultimately mislead the jury.[7] Accordingly, the Court should preclude any evidence or argument by the defendant that attempts to demonize ICE, instead of focusing on the defendant's actions.

VII.    The Defendant Must Disclose Rule 16(b) Discovery and Trial Exhibits To Be Introduced During His Case-in-Chief

The government respectfully requests that the Court order the defendant to disclose defense exhibits, including exhibits he intends to introduce through cross-examination of government witnesses, no later than one week before jury selection (i.e., August 4, 2025).

Federal Rule of Criminal Procedure 16(b) governs a defendant's disclosures in a criminal case. In relevant part, it requires the defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A). The Rule's purpose "is to avoid surprise and gamesmanship" and "it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial." United States v. Hsia, No. 98-CR-57 (PLF), 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000).

Of course, Rule 16 does not require a defendant to disclose documents he intends to use for purposes of impeaching a government witness (just as Rule 16 does not require the

---

[7] See United States v. Komisaruk, 885 F. 2d 490, 496 (9th Cir. 1989) (the district court granted the government's motion in limine precluding the defendant form "introducing her political, religious, or moral beliefs as evidence as a negative defense to the government's proof of the elements of the crime charged).

government to disclose documents it intends to use to impeach defense witnesses).  But to the extent that a defendant seeks to admit into evidence a document while cross-examining a witness during the government's case-in-chief in order to affirmatively support the defendant's theory of the case, such a document falls within the ambit of Rule 16 and must be produced.  As the District Court for the District of Columbia has explained:

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense . . . . The cross-examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

 Hsia, No. 98-CR-57 (PLF) at *2 (quoting Black's Law Dictionary 207 (7th ed. 1999)).  The Hsia court distinguished documents introduced by a defendant via a government witness — which do fall within Rule 16 and should be disclosed — from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, [which] is not part of [the defendant's] case-in-chief."  Id. at *2 n.1.

Courts in this district have repeatedly recognized this distinction, ordering the production of defense exhibits "that will not be used solely for impeachment purposes," even if the defense intends to introduce such exhibits during cross-examination.  United States v. Smothers, No. 20-CR-213 (KAM), 2023 WL 348870, at *22 (E.D.N.Y. Jan. 20, 2023); see also United States v. Warren, No. 22-CR-231 (DLI), ECF Order (E.D.N.Y. Sept. 6, 2023) (ordering disclosure of defense exhibits in felon-in-possession trial six days prior to jury selection); United States v. Thorpe, No. 19-CR-492 (HG), Pretrial Conference Tr. 41 (E.D.N.Y. Aug. 23, 2023) (granting government's motion for disclosure of Rule 16 discovery and defense exhibits two weeks before trial, explaining, "It's not only exhibits that you would introduce if you called a

witness, but it's exhibits that you know you're going to introduce through, let's say, the case agent. . . . It's not only what you're going to put on once the Government says, 'the Government rests.'"); United States v. Napout, No. 15-CR-252 (PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (holding that "Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant."). That obligation extends to material produced by the government in discovery that the defense intends to use as an exhibit. See Smothers, 2023 WL 348870, at *22 (requiring advance production of defense exhibits "regardless of whether such an exhibit is in the defense's sole custody").[8]

Here, the government first requested the defendant's Rule 16 materials with its discovery letter on May 27, 2025; to date, the defendant has not disclosed any documents he intends to introduce at trial. The defendant's failure to provide reciprocal discovery may be a result of having none to produce; he may not intend to introduce any evidence at trial, as is his right. The defendant, however, cannot rely upon an undefined defense strategy to avoid producing documents in compliance with the spirit and letter of Rule 16. Accordingly, to avoid gamesmanship, unfair surprise and undue delay during the trial, the government respectfully requests that the Court order the defendant to identify any defense exhibits he intends to

---

[8]    Numerous other district courts outside of this District have interpreted Rule 16(b) similarly. See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross-examination of a government witness other than for impeachment purposes."); United States v. Holden, No. 13-CR-444 (AJB), 2015 WL 1514569, at *4 (D. Or. Mar 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 12-CR-319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (stating that the approach adopted in Holden, Swenson, and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15-CR-568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same).

introduce during the government's case (i.e., not those documents to be used for impeachment purposes only) or any defense case no later than August 8, 2025, one business day before jury selection.

   The government further respectfully submits that, to avoid gamesmanship and delay during the trial, the Court should set a schedule for disclosure of the statements of any defense witnesses other than the defendant himself.  See Fed. R. Crim. P. 26.2.  The government proposes that the Court order that government and defense Rule 26.2 material be exchanged simultaneously on a date agreed-upon by the parties or, if necessary, set by the Court.  See United States v. Boustani, No. 18-CR-681 (WFK), ECF No. 120 at 1-2 (E.D.N.Y. July 31, 2019) (ordering simultaneous exchange of Rule 26.2 material).

   Finally, to avoid any unnecessary objections or delays during opening statements, the government respectfully requests that the Court order that the parties mutually exchange any demonstratives each party intends to use during opening statements no later than August 11, 2025.  See United States v. Aguilar, No. 20-CR-390 (ENV), ECF No. 238 at 1-2 (E.D.N.Y. Jan. 2, 2024) (ordering exchange of opening-statement demonstratives after completion of jury selection).  The government respectfully submits that such demonstratives should not include any exhibits, as exhibits generally may not be shown to the jury during opening statements. See id. at 1 ("Aguilar may not during his opening statement show or reference by exhibit number exhibits marked for use at trial."); Williams v. Vahey, No. 20-CV-2560 (KAM), 2023 WL 130834, at *1 (E.D.N.Y. Jan. 8, 2023).

CONCLUSION

For the foregoing reasons, the government's motions in limine should be granted in their entirety; or that the Court reserve decision until it deems appropriate. The government further requests leave to supplement its motions if it becomes necessary.

Dated: Central Islip, New York
      July 11, 2025

                           Respectfully submitted,

                           JOSEPH NOCELLA, JR.
                           UNITED STATES ATTORNEY
                           Eastern District of New York

            By:            /s/
                           Sarah A. Elardo
                           Special Assistant United States Attorney
                           (718) 254-6263