UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

       - v -

                                               **NOTICE OF MOTION**
                                               25-CR-174 (JS)

ANIBAL EDGARDO MEJIA GUZMAN

                     Defendant
-----------------------------------------------------------X

PLEASE TAKE NOTICE that through counsel, Felipe Andres Garcia, Assistant Federal Defender of the Federal Defenders of New York, and all papers and proceedings – Mr. Mejia Guzman moves this Court, before HONORABLE JOANNA SEYBERT, in the United States District Court for the Eastern District of New York, on August 11, 2025, or as soon thereafter as counsel may be heard for an ORDER on the following *in limine* motions:

1. To authorize attorney-conducted, individual, sequestered *voir dire* of the potential jurors;

2. To preclude evidence of crimes, wrongs, or other acts pursuant to Federal Rule of Evidence 404(b);

3. To preclude cross examination of Mr. Mejia Guzman about his prior convictions for Driving while Ability Impaired and Driving While Intoxicated;

4. To preclude the government from introducing Mr. Mejia Guzman's immigration status, his history of a prior voluntary departure and the admissions he gave immigration officers after his arrest; and

5. To preclude any unnoticed statements.

DATED:      CENTRAL ISLIP, N.Y.
            July 11, 2025

                                    Respectfully submitted,

                                    _____
                                    Felipe Garcia
                                    Attorney for Mr. Mejia Guzman
                                    Federal Defenders of New York, Inc.
                                    770 Federal Plaza, Central Islip, NY, 11722
                                    (631) 712-6513

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
UNITED STATES OF AMERICA

                                                **MEMORANDUM OF LAW**
                                           **IN SUPPORT OF DEFENSE**
         - v -                                     **_IN LIMINE_ MOTIONS**

ANIBAL EDGARDO MEJIA GUZMAN                25-CR-174 (JS)

                      Defendant
----------------------------------------------------------X

## I.      MOTION FOR ATTORNEY CONDUCTED _VOIR DIRE_

Anibal Edgardo Mejia Guzman, through undersigned counsel, pursuant to his Fifth and Sixth Amendment rights to secure the right to trial by an impartial jury and to effective assistance of counsel, U.S. Const. amends. V, VI and Federal Rule of Criminal Procedure 24(a), respectfully moves this Court to authorize attorney-conducted, individual, sequestered _voir dire_ of the potential jurors.

Mr. Mejia Guzman's case involves a very controversial topic which has been highly publicized in recent months, Immigration and Customs Enforcement ("ICE") raids, arrests, and ensuing deportations. There have been several anti-ICE protests nationwide that have been widely covered by news media, including one in Los Angeles that was published by media around the world.[1] Just a few days ago there was an altercation between ICE agents and protesters outside a courthouse in San Francisco.[2]

---

[1] _Everything we know about the protests in LA and other US cities_, BBC (June 11, 2025), https://www.bbc.com/news/articles/cj93d3r0zz0o.
[2] _Tensions escalate in San Francisco over immigration enforcement_, NY Times (July 9, 2025), https://www.nytimes.com/2025/07/09/us/ice-immigration-protest-san-francisco.html; _Video: ICE agents drive SUC through protesters at S.F. immigration court_, Mission Local (July 8, 2025), https://missionlocal.org/2025/07/video-ice-agents-brandish-rifles-drive-through-protesters-at-s-f-immigration-court/

These protests have also extended to Long Island where people in local neighborhoods have marched and held rallies demanding that ICE agents leave Long Island.[3]

In addition to the protests, the NY Civil Liberties Union recently sued Nassau County and its police department after Bruce Blakeman, the Nassau County Executive, announced a partnership between Nassau Police Department and Immigration and Customs Enforcement, vowing to help the federal government with their immigration crackdown.[4] This past week, the cooperation between local governments and ICE was subject to protest once again, this time in Brentwood, where local leaders called out the fire department for allowing ICE to use its parking lot as a base of operations.[5]

Although this is not a media case, the arrest and detention of undocumented immigrants is a contentious subject, highly covered by news media outlets in Long Island.[6] Just last month, ICE agents in Westbury stopped and detained a U.S. Citizen, in a case that sparked national media attention.[7]

---

[3] *Long Island immigration arrests prompt 'ICE Out of Hempstead" march*, News 12 Long Island (June 29, 2025), https://longisland.news12.com/long-island-immigration-arrests-prompt-ice-out-of-hempstead-march; *Rally in Mineola calls for ICE to leave Long Island*, New 12 The Bronx (June 15, 2025), https://bronx.news12.com/rally-in-mineola-calls-for-ice-to-leave-long-island; *Anti-ICE protesters march through Huntington Station*, News 12 Long Island (June 14, 2025), https://longisland.news12.com/anti-ice-protesters-march-through-huntington-station.
[4] *ICE is working with Long Island Police. A lawsuit calls that illegal*, NY Times (June 24, 2025), https://www.nytimes.com/2025/06/24/nyregion/ice-nassau-county-immigrant-arrest-lawsuit.html.
[5] *ICE 'shockingly' takes over firehouse lot in major Long Island immigrant hub*, New York Post (July 8, 2025), https://nypost.com/2025/07/08/us-news/ice-shockingly-takes-over-firehouse-lot-in-major-long-island-immigrant-hub/.
[6] *Standout student at Suffolk County Community College being deported to Colombia after ICE agents took her in May*, Newsday (July 9, 2025), https://www.newsday.com/long-island/suffolk/suffolk-community-college-student-deported-ice-v5schoz4; *Outrage on Long Island after ICE detains bagel shop manager*, CBS News, New York, (June 23, 2025), https://www.cbsnews.com/newyork/news/ice-detains-long-island-bagel-shop-manager/; *What are they going to do? Long Island mother of 5 detained by ICE, sent to TX*, NBC New York (June 18, 2025), https://www.nbcnewyork.com/long-island/ice-arrest-brentwood-mother-martinez-ventura/6307474/.
[7] *Video: NY man driving to work is handcuffed by ICE despite being a U.S. Citizen*, NBC New York (June 12, 2025), https://www.nbcnewyork.com/long-island/video-long-island-man-driving-to-work-handcuffed-by-ice-despite-being-citizen/6301068/.

As a result of all the publicity surrounding immigration raids, arrests, and deportations, many potential jurors hold impressions and opinions about the subject that will be disqualifying for service in this case and that will otherwise inform the parties' use of peremptory challenges. To ensure that Mr. Mejia Guzman receives effective assistance of counsel in the jury selection process and a fair and impartial jury, it is imperative that a searching inquiry into pretrial publicity, potential hardship, and pre-judgment as to the issue of immigration, be conducted. To maximize the value of that searching inquiry, this Court should authorize attorney-conducted, individualized, sequestered *voir dire*. A *voir dire* conducted by attorneys with potential jurors questioned individually and sequestered from each other will allow the parties to obtain full, necessary information relevant to for-cause strikes and peremptory challenges while minimizing the possible taint on other potential jurors by the answers of the questioned juror. Rule 24(a)(1) expressly permits attorney-conducted voir dire. *See* Fed. R. Crim. P. 24(a)(1) ("The court may examine prospective jurors or may permit the attorneys for the parties to do so.").

"[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors." *Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (relying on *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981); *Dennis v. United States*, 339 U.S. 162, 171-72 (1950); *Morford v. United States*, 339 U.S. 258, 259 (1950)). Specifically, the U.S. Constitution entitles a defendant to a searching *voir dire* for both the government and the defendant to gather the information needed to exercise juror challenges – peremptory and cause – in a fair, intelligent and informed manner. A thorough *voir dire* also provides

the Court with sufficient information to rule accurately on the requested removal of a juror for cause. *Morgan*, 504 U.S. at 729-30 (quoting *Rosales-Lopez*, 451 U.S. at 188 ("Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled"). Thorough *voir dire* is necessary because jurors "may have an interest in concealing [their] own bias" or "may be unaware of it." *Smith v. Phillips*, 455 U.S. 209, 221-22 (1982) (O'Connor, J. concurring).

Thus, federal courts have recognized the importance of attorney participation in the jury selection process. *See*, *e.g.*, *United States v. Ible*, 630 F.2d 389 (5th Cir. 1980). In *Ible*, the Fifth Circuit stated:

> [W]hile Federal Rule of Criminal Procedure 24(a) gives wide discretion to the trial court, *voir dire* may have little meaning if it is not conducted at least in part by counsel. The "federal" practice of almost exclusive *voir dire* examination by the court does not take into account the fact that it is the parties, rather than the court, who have a full grasp of the nuances and the strengths and weaknesses of the case…Experience indicates that in the majority of situations questioning by counsel would be more likely to fulfill the need than an exclusive examination in general terms by the trial court.
>
> ***
>
> More recently, records reviewed in this court reflect a new pattern by trial courts. The trial judge will explain the nature of the case in general terms, point out the parties and counsel, cover the most basic points of law (burden of proof, presumption of innocence, right to remain silent, etc.), explain the procedures and schedule to be followed and then turn the questioning over to trial counsel. We encourage this approach.

630 F.2d at 395 & n.8. *See also United States v. Corey*, 625 F.2d 704, 707 (5th Cir. 1980) ("This court has previously stressed that *voir dire* examination not conducted by counsel has little meaning.").

Of equal import is the requirement that the trial judge be, and appear to be, neutral. Jurors look to the judge as the ultimate authority figure. Social science research and the experiences of trial attorneys reflect that jurors are less likely to be fully candid and complete when responding to questions from a judge as opposed to those from an attorney. *See* David Suggs & Bruce D. Sales, *Juror Self-Disclosure in the Voir Dire: A Social Science Analysis*, 50 IND. L.J. 245, 253-58 (1981) (the difference in power structure enables attorneys to obtain more or different information from jurors than judges can elicit); Dale W. Broeder, *Voir Dire Examinations: An Empirical Study*, 38 S. Cal. L. Rev. 503, 506, 513 (1965).

As the U.S. Supreme Court has noted, the influence of the trial judge on the jury "is necessarily and properly of great weight" and "his lightest word or intimation is received with deference and may prove controlling." *Quercia v. United States,* 289 U.S. 466, 470 (1933) (*quoting Starr v. United States*, 150 U.S. 614, 626 (1984)). The impact of a judge's perceived position can chill the searching inquiry to determine if a potential juror is properly seated on a jury. *See McGill v. Commonwealth*, 10 Va. App. 237, 242 (Va. Ct. App. 1990) ("When asked by the court, a suggestive question produces an even more unreliable response.")

The social sciences provide additional support for the proposition that attorney-conducted *voir dire* is essential to ensure a fair and impartial jury is selected in this case. Jurors are often intimidated by the judge and are more apt to give candid answers to attorneys. *See* Jones, *Judge Versus Attorney-Conducted Voir Dire*, 11 Law & Human Behavior 131, 143 (1987) (in experimental setting, jurors responded more candidly to

attorney's questions than judge's). Attorney-conducted *voir dire* is a more effective tool for eliciting bias than questioning from the Court alone.

Moreover, "[a] general question directed to the entire group of prospective jurors is inadequate." *United States v. Giese*, 597 F.2d 1170, 1183 (9th Cir. 1979). Individual and sequestered *voir dire* is necessary here – particularly as to certain areas of questioning such as highly publicized ICE arrests and views on immigration generally. *See United States v. Katallah*, 313 F. Supp. 3d 176, 194 (D.D.C. 2018) (to ensure the defendant received a fair trial "[t]he Court (and the parties) stressed this in jury selection, with the administration of a length questionnaire and individualized *voir dire* that attempted to surface such predispositions"); *United States v. North*, 713 F. Supp. 1444, 1444-45 (D.D.C. 1989) (after certain jurors were excused based upon answers to questionnaire, jurors underwent a searching inquiry conducted by the Court and counsel from both sides. This inquiry was conducted entirely on an individual basis, with each juror being questioned separately"); *Giese*, 597 F.2d at 1183 ("The district court should conduct a careful, individual examination of each prospective juror preferably out of the presence of other jurors").

In high-profile and high-publicity cases federal courts regularly approve and utilize attorney-conducted *voir dire* and individual, sequestered questioning of jurors. *See, e.g., United States v. Skilling*, 561 U.S. 358, 389 (2010) (using extensive jury questionnaire and follow-up *voir dire* about publicity with individual, sequestered jurors); *United States v. Jones*, 566 F.3d 353, 358 (3rd Cir. 2009) (selection process included detailed questionnaire and "the attorneys were deeply involved in the process of questioning

jurors," with many dismissed for cause given bias towards gangs); *United States v. McVeigh*, 153 F.3d 1166, 1184 (10th Cir. 1998) (extended questionnaire and "each of the seated jurors was individually questioned about his or her ability to set aside the effects that any exposure to pretrial publicity may have had"); *United States v. Maldonado-Rivera*, 922 F.2d 934, 971 (2d Cir. 1990) (written questionnaire and defense counsel individually questioned prospective jurors); *United States v. Affleck*, 776 F.2d 1451, 1455 (10th Cir. 1985 (questionnaire and *voir dire* conducted by court and counsel); *United States v. Wittig*, 2005 WL 758605 at *1 (D. Kan. April 4, 2005) (juror questionnaires and individualized, sequestered *voir dire*); *Untied States v. Felton*, 239 F. Supp. 2d 122, 125 (D. Mass. 2003) (potential jurors completed lengthy questionnaire); *United States v. Houlihan*, 926 F. Supp. 14, 16 (D. Mass. 1996) (questionnaire and attorney-conducted, individualized *voir dire* of jurors); *Untied States v. Helmsley*, 733 F. Supp. 600, 610 & n.8. (S.D.N.Y. 1989) (prospective jurors completed "comprehensive juror questionnaires" and individual follow-up questions based in part on the prospective juror's answers on questionnaire).

While the government may argue that unlike the cases cited above, Mr. Mejia Guzman's case is not a media case, it is impossible to ignore the pervasiveness of the publicity and attention that ICE raids, arrests, and detentions have had within the last few months both nationwide and locally. The anti-immigrant discourse of the Trump administration and the way undocumented immigrants are portrayed focuses on group culpability labeling this group of people as "rule breakers" just because they are present in this country. This is not a typical case, and thus, typical *voir dire* procedures are

inadequate. Accordingly, this Court should permit extended attorney-conducted, individualized, and sequestered *voir dire* of potential jurors.

## II.    MOTION TO PRECLUDE EVIDENCE OF CRIMES, WRONGS, OR OTHER ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

Anibal Mejia Guzman, through undersigned counsel, respectfully moves this Court to preclude the government from presenting any evidence of other crimes, wrongs, or other acts at trial, pursuant to Federal Rule of Evidence 404(b). In the alternative, we ask the Court to order the government to identify any such evidence immediately so that the Court can make a determination as to whether such evidence is being proffered for a proper purpose, and if so, whether it survives the balancing test of Federal Rule of Evidence 403. Furthermore, if the government proffers that any such crimes, wrongs, or other evidence is in furtherance of the charged conduct or inextricably intertwined and thus not subject to Rule 404(b), we ask the Court to order that the government identify the evidence immediately so that the Court may determine in advance of its proffer at trial, whether the evidence is, in fact, subject to Rule 404(b) and, if not, whether it still survives the balancing test of Rule 403.

Federal Rule of Evidence 404(b)(1) prohibits the use of crimes, wrongs, or other acts to prove "a person's character in order to show that on a particular occasion the person acted in accordance with their character." Rule 404(b)(2) permits the use of such evidence however, for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant, the government must provide reasonable notice of the general nature of any

such evidence the government intends to offer at trial and must do so before trial. The Advisory Committee Notes to the 191 amendment of Rule 404(b) states that the change "adds a pretrial notice requirement in criminal cases and is intended to reduce surprise and promote early resolution on the issue of admissibility."

In the alternative, the government should be ordered to immediately disclose any evidence it seeks to admit under Rule 404(b)(2) so that the Court can determine well in advance of trial, first, whether the evidence in fact falls under a permitted purpose of Rule 404(b)(2), and second, that the evidence meets the balancing test of Federal Rule of Evidence 403. Evidence found relevant and admissible must still meet the balancing test of Rule 403: that its probative value is not substantially outweighed by prejudice, confusion, misleading the jury, undue delay, wasting time, or is needless cumulative. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Rutkoske*, 506 F.3d 170, 176-77 (2d Cir. 2007); *United States v. Kahale*, 789 F. Supp. 2d 560, 564 (E.D.N.Y. 2007) (Glasser, J.). Finally, while evidence of acts not specifically charged in the indictment has been found to be admissible if the acts were taken in furtherance of a charged conspiracy, *see United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992), or are inextricably intertwined with the crimes charged in the indictment and their introduction is necessary to complete the story of the crime on trial, *see United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), such evidence is still subject to the balancing test of Rule 403. *See United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) ("Pursuant to Rule 403, a trial judge retains discretion to exclude plainly relevant evidence if its probative value is substantially outweighed by its prejudicial effect.").

For these reasons, we respectfully request that the government be precluded form introducing any evidence of crimes, wrongs, or other acts pursuant to Rule 404(b), or be ordered to immediately disclose such evidence so the Court may make a ruling as to admissibility pretrial. To the extent that the government believes such evidence is not subject to the restrictions of Rule 404(b), the Defense again requests that the government be ordered to immediately disclose such evidence, so that the Court may make a ruling as to admissibility pretrial.

### III. MOTION TO PRECLUDE EVIDENCE OF DEFENDANT'S PRIOR CONVICTIONS DURING CROSS EXAMINATION PURSUANT TO FEDERAL RULES OF EVIDENCE 609 AND 403

Anibal Mejia Guzman, through undersigned counsel, respectfully moves this Court to preclude the government from presenting evidence of his prior convictions during cross examination, pursuant to Federal Rules of Evidence 403 and 406. The defense respectfully requests a ruling in advance of trial, so that Mr. Mejia Guzman can be properly advised regarding his decision whether to take the witness stand.

Federal Rule of Evidence 609(a) allows evidence of a defendant's prior conviction to be admitted for the purpose of attacking the defendant's character for truthfulness, if he testifies and (1) the crime was punishable by death or imprisonment of one year and the probative value of admitting the evidence outweighs its prejudicial effect to the accused[8], or (2) if the elements of the crime required proof or admission of an act of dishonesty or false statement, regardless of punishment[9]. The types of crimes covered

---

[8] *See* Fed. R. Evid. 609(a)(1)(B).
[9] *See* Fed. R. Evid. 609(a)(2).

by Federal Rule of Evidence 609(a)(1)(B) are limited to those "peculiarly probative of credibility, such as those for perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense or any other offence in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully. *See United States v. Bumagin*, 136 F. Supp. 3d 361, 375-76 (E.D.N.Y. 2015) (*citing United States v. Hayes*, 553 F.2d 824, 827 (2d Cir. 1977).

If more than 10 years have passed since the witness' conviction or release from confinement for it, then Federal Rule of Evidence 609(b) modifies Federal Rule of Evidence 609(a). *See Bumagin,* 136 F. Supp. 3d at 376. Rule 609(b) provides that evidence of a conviction older than 10 years is admissible only if "its probative value supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and the proponent gives an adverse party reasonable written notice. *Id.*

Judges should exercise caution when allowing evidence of prior convictions when the witness is the defendant. As the advisory committee noted:

> "The rule recognizes that, in virtually every case in which prior convictions are used to impeach the testifying defendant, the defendant faces a unique risk of prejudice – i.e., the danger that convictions that would be excluded under Fed. R. Evid. 404 will be misused by a jury as propensity evidence despite their introduction solely for impeachment purposes. Although the rule does not forbid all use of convictions to impeach a defendant, it requires that the probative value of convictions as impeached evidence outweighs their prejudicial effect."

Fed. R. Evid. 609, advisory committee's note to 1990 Amendments.

In weighing the probative value of the evidence of the prior conviction against its prejudicial effect, courts in the Second Circuit consider the following factors: (1) the impeachment value of the prior crimes, (2) the date of the conviction and the Defendant's subsequent history, (3) the degree of similarity between the past crimes and this crime, (4) the centrality of the defendant's credibility in this case, and (5) the importance of defendant's testimony. *United States v. Brown*, 606 F. Supp. 2d 306, 311-12 (E.D.N.Y. 2009).

Mr. Mejia Guzman has two prior convictions in his record. In 2006 he pled guilty to a traffic infraction of Driving While Ability Impaired by Alcohol and sentenced to a conditional discharge. In 2010 he pled guilty to a misdemeanor for Driving While Intoxicated and sentenced to 30 days jail. Neither of these two convictions involve crimes of dishonesty or false statements, nor was he convicted of felony charges punishable by death of imprisonment for more than a year. Thus, Federal Rule of Evidence 609(a) does not apply.

Since both convictions are over 10 years old, the only possible way they can be admitted into evidence is through Federal Rule of Evidence 609(b). The impeachment value of Mr. Mejia Guzman's two prior convictions is low because none of them bear "on the accused's propensity to testify truthfully." Furthermore, he has remained out of trouble since being released after serving his 30-day sentence in 2010. Although the convictions are not similar in nature, if Mr. Mejia Guzman chooses to testify his credibility will be directly in issue and it will be a crucial issue for the jury to evaluate. Mr. Mejia Guzman's testimony will be of utmost importance to his defense. A

conviction based on operating a motor vehicle after drinking alcohol in no way would aid the jury in assessing Mr. Mejia Guzman's credibility. Instead, it would distract the jury and allow them to misuse such evidence as propensity evidence, causing grave prejudice to Mr. Mejia Guzman. If the Court allows evidence of his two prior convictions to come in, it will discourage Mr. Mejia Guzman from exercising his 6th amendment right to testify in his own defense. Therefore, the court should preclude the government from cross examining Mr. Mejia Guzman on his two prior convictions under Federal Rules of Evidence 609 and 403.

IV.     **MOTION TO PRECLUDE EVIDENCE OF MR. MEJIA GUZMAN'S IMMIGRATION STATUS AND PRIOR VOLUNTARY DEPARTURE FROM THE UNITED STATES**

Anibal Mejia Guzman, through undersigned counsel, respectfully moves this Court to preclude the government from presenting any evidence of his immigration status, his prior voluntary departure and the admissions he gave immigration officers after his arrest[10], pursuant to Federal Rules of Evidence 401, 402 and 403.

The issue of immigration has recently dominated the headlines in the United States. The current administration has sought to rapidly increase deportations, and in doing so, has portrayed unauthorized immigrants as a primary source of national problems. It has made extensive efforts to link unauthorized immigrants to crime. *See, e.g.*, The White House, No Safe Harbor for Illegal Immigrant Criminals Under President

---

[10] These statements were provided to the defense on May 27, 2025 (Bates-numbered GUZMAN000001-GUZMAN000008 with an exact copy under Bates-numbered GUZMAN000013-GUZMAN000020).

Trump (April 14, 2025); U.S. Immigration & Customs Enforcement, 100 Days of Record-Breaking Immigration Enforcement in The U.S. Interior (April 29, 2025).

In part because of this concerted campaign, the risk of unfair prejudice against someone with Mr. Mejia Guzman's immigration history has never been higher. Mr. Mejia Guzman is an undocumented immigrant who does not have legal status to reside in the United States. He voluntarily returned to his native country of Honduras on November 5, 2010. That history has no relevance to this case. Mr. Mejia Guzman is charged with assaulting a federal officer, a crime whose elements have nothing to do with immigration status or history. Nor would evidence of that immigration history make any fact of consequence more or less likely. Accordingly, evidence of Mr. Mejia Guzman's immigration status and history is inadmissible under Federal Rules of Evidence 401, 402 and 403.

Courts have frequently determined that evidence of immigration history is irrelevant under Rules 401 and 402. *United States v. Perez-Gonzalez*, 2025 WL 1689962, at *2 (S.D. Ind. June 17, 2025) ("[t]he Court agrees with [defendant] that evidence concerning his or any of his associates' legal or illegal immigration status would be irrelevant, immaterial, and prejudicial"); *United States v. Hussain*, 2024 WL 5481339, at *3 (D. Vt. Oct. 23, 2024); *United States v. Delgado*, 2006 WL 1308303, at *1 (D.N.M. Feb. 9, 2006). This Court should do the same.

The government does not need evidence of Mr. Mejia Guzman's immigration status to prove or disprove any fact of consequence. The vehicle stop that gave rise to the allegations in this case had nothing to do with Mr. Mejia Guzman's immigration history

or status. Instead, ICE and Homeland Security Officers unlawfully stopped his vehicle, seized and arrested Mr. Mejia Guzman acting on an administrative warrant of removal or deportation for someone else. Mr. Mejia Guzman was not the subject of the warrant.

Nor does Mr. Mejia Guzman's immigration status and history have any bearing on the truth of the allegations of assault. Given the nature of the agents' stop and arrest, even if Mr. Mejia Guzman had been a United States citizen, the case and the government's methods of proof would remain unchanged. In other words, nothing about Mr. Mejia Guzman's immigration history would help prove or disprove the narrow charge in this case. The Court should exclude that evidence under Rules 401 and 402.

Even if Mr. Mejia Guzman's immigration history had some marginal probative value, the serious danger of unfair prejudice would render it inadmissible.

Courts have long been concerned about prejudice against unauthorized immigrants. *See, e.g.*, *Sanchez v. Davis*, 888 F.3d 746, 750-51 (5th Cir. 2018) (explaining the danger of unfair prejudice associated with immigration status, and collecting cases where courts precluded reference to immigration matters). In addition, the current administration has made illegal immigration one of its signature issues and has vigorously asserted that unauthorized immigrants are closely linked to crime. *See, e.g.*, Devlin Barrett et al., *U.S. Deports More Detainees to El Salvador, Calling Them 'Violent Criminals,'* N.Y. Times (Mar. 31, 2025); The White House, Every Day, the Trump Administration is Getting Violent Criminal Illegals Off Our Streets (June 20, 2025). Articles about the administration's deportation efforts consistently make the front page of major news outlets. It can be said that the issue of unauthorized migrants and their

supposed criminal tendencies, has rarely been a more salient subject in the popular discourse.

Under these circumstances, the risk of unfair prejudice plainly outweighs any minimal probative value Mr. Mejia Guzman's immigration status, history, and admissions to immigration officials might have. Even before the current national focus on unauthorized immigration, courts had concluded that the probative value of immigration history is comparatively low, while the risk of unfair prejudice is high. *See, e.g.*, *United States v. Garcia-Lagunas*, 835 F.3d 479, 493 (4th Cir. 2016); *see also Sanchez*, 888 F.3d at 750-51. With immigration policy currently under a microscope—and given the specific claim that unauthorized immigrants have criminal tendencies—some jurors may well take Mr. Mejia Guzman's immigration history as proof of the charge. Thus, evidence of Mr. Mejia Guzman's immigration status, his history of a prior voluntary departure, and the admissions he gave immigration officials after his arrest, should be excluded under Rules 401, 402, and 403.

## V.    MOTION TO PRECLUDE EVIDENCE OF UNNOTICED STATEMENTS

Anibal Mejia Guzman, through undersigned counsel, respectfully moves this Court to preclude the government from presenting any evidence of unnoticed statements not provided to the defense during discovery. The only statements provided to the Defense are Bates-numbered GUZMAN000001-GUZMAN000008 with an exact copy of the same statements under Bates-numbered GUZMAN000013-GUZMAN000020.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Mr. Mejia Guzman's motions *in limine*, and enter orders:

(1) authorizing attorney-conducted, individual, sequestered *voir dire* of the potential jurors;

(2) precluding evidence of crimes, wrongs, or other acts pursuant to Federal Rule of Evidence 404(b);

(3) precluding cross examination of Mr. Mejia Guzman about his prior convictions for Driving while Ability Impaired and Driving While Intoxicated; and

(4) preclude the government from introducing Mr. Mejia Guzman's immigration status, his history of a prior voluntary departure, and the admissions he made to immigration officials after his arrest.

(5) preclude any unnoticed statements.

DATED:    CENTRAL ISLIP, N.Y.
          July 11, 2025

Respectfully submitted,

Felipe Garcia
Attorney for Mr. Mejia Guzman
Federal Defenders of New York, Inc.
770 Federal Plaza, Central Islip, NY, 11722
(631) 712-6513

cc:    Sarah Elardo, AUSA (by ECF and email)