UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA

                                        **DEFENSE REPLY TO**
                                 **GOVERNMENT'S MOTIONS**
                                           **IN LIMINE**

       - v -

ANIBAL EDGARDO MEJIA GUZMAN                25-CR-174 (JS)

                Defendant
-----------------------------------------------------------X

       The defense submits this response to the government's motions *in limine*. ECF No. 18. The government has moved (1) to introduce direct evidence that law enforcement was lawfully at the location to make an administrative arrest of an intended target; (2) to introduce evidence of Mr. Mejia Guzman's immigration status at the time of the arrest; (3) to introduce evidence of Mr. Mejia Guzman's prior Driving While Ability Impaired by Alcohol and Driving While Intoxicated convictions; (4) to introduce Mr. Mejia Guzman's post-arrest statements to law enforcement; (5) to prevent Mr. Mejia Guzman from introducing "self-serving" statements; (6) to preclude the defense from introducing any evidence eliciting sympathy; (7) to preclude the defense from introducing evidence or argument about the government's motives and charging decisions; (8) to preclude the defense from introducing evidence or argument about possible punishment or collateral consequences; (9) to preclude the defense from introducing evidence or argument casting aspersions on Immigration and Custom Enforcement (ICE); and (10) to request that the Court order the defense to disclose Rule 16(b) discovery and trial exhibits to be introduced during defense's case-in-chief.

I. **Response to the Government's Motion to Admit the Warrant of Removal of the Intended ICE Target and Evidence that Law Enforcement was Lawfully Present at the Location**

Mr. Mejia Guzman does not object to the government's request to introduce the following background facts: that Officers Dickerson and Abbensetts were present in West Hempstead to make an administrative arrest, that their target was a 27-year-old male whose last known address was 285 Belmont Avenue, and that they observed a male leaving the residence and entering a Toyota Tacoma bearing a Maryland license plate numbered 9FC4703. Nor does the defense object to the introduction of the warrant of removal into evidence. Without those facts, it would be difficult to complete the narrative of events.

However, like all officers of the Court, the government has an obligation to present this information accurately. Specifically, the government should not imply that its authority to arrest the intended target, Yerson Jocsan Azmavet, stemmed from a warrant issued by a neutral and detached magistrate. In this case, the "warrant" in question was issued by an immigration officer and the administrative warrant was not reviewed by a court after it was issued.

II. **Evidence of Mr. Mejia Guzman's Immigration Status is Inadmissible under FRE 403**

The government's sole argument for admitting Mr. Mejia Guzman's immigration status is that it offered him a motive to resist arrest. *See* ECF No. 18 at 17. It maintains that this motive makes it more likely that he "knowingly and intentionally resisted the officers." *Id.* But this theory of admissibility overlooks the nature of a § 111(a) charge.

As the Second Circuit explained in *United States v. Melhuish*, 6 F.4th 380 (2d Cir. 2021), § 111 creates a general intent crime, not a specific intent crime. *Id.* at 394-95. The government does not have to prove that Mr. Mejia Guzman's objective was to assault, resist, or impede the officers. Instead, it need only prove that he intended the "bodily movement which constitutes the act which the crime requires." *Id.* at 394.

In other words, *why* Mr. Mejia Guzman allegedly resisted is immaterial. What matters is whether any oppositional actions were intentional (as opposed to involuntarily caused by the officers' illegal seizure). As to this question, Mr. Mejia Guzman's immigration status has virtually no probative value. In deciding whether any resistance was intended, the jury will have to consider (1) whether the officers' simultaneous efforts to seize Mr. Mejia Guzman from opposite sides of the vehicle produced involuntary movements, (2) whether the officers' testimony about Mr. Mejia Guzman's efforts to move his car are credible, and (3) whether Mr. Mejia Guzman failed to comply with the officers' commands. Put otherwise, it will need to look to signs that Mr. Mejia Guzman's physical movements (or lack thereof) were voluntary and intentional, not speculate about his potential motive.

Meanwhile, the significant stigma that accompanies Mr. Mejia Guzman's immigration status is obvious. Courts have long recognized the prejudicial nature of this evidence. *See e.g.*, *Sanchez v. Davis*, 888 F.3d 746, 750-51 (5th Cir. 2018); *see also* ECF No. 19 at 16 (collecting cases). This prejudice is greater today, when the Executive that brings this prosecution is making every effort to inaccurately link immigrants to crime. The Court hardly needs examples of these efforts, which blare almost daily from the

headlines of major newspapers and the White House's social media accounts. *See, e.g.*, Michael D. Shear et al., *White House P.R. Campaign Aims to Show Trump Making Good on Immigration Promise*, N.Y. Times (Feb. 1, 2025) (describing the current administration's public relations approach to unauthorized immigration). The government's message—often delivered through the Department of Justice—has been unmistakable: undocumented immigrants threaten America. *See, e.g.*, OFFICE OF THE ATTORNEY GENERAL, U.S. DEPARTMENT OF JUSTICE REQUESTS DATA ON CRIMINAL ILLEGAL ALIENS IN CALIFORNIA JAILS (July 17, 2025) ("[i]n recent years, the United States suffered an invasion of illegal aliens at an unprecedented scale. Far too many of those illegal aliens have gone on to commit crimes on American soil, including rapes, murders, and other violent crimes"); OFFICE OF THE ATTORNEY GENERAL, JUSTICE DEPARTMENT FILES LAWSUIT TO STOP NEW YORK'S UNLAWFUL "PROTECT OUR COURTS ACT" FROM OBSTRUCTING IMMIGRATION ENFORCEMENT (June 12, 2025) (quoting Attorney General Pamela Bondi as stating "[l]awless sanctuary city policies are the root cause of the violence that Americans have seen in California, and New York State is similarly employing sanctuary city policies to prevent illegal aliens from apprehension"). After making every effort to blame undocumented immigrants for crime, the government cannot credibly deny the very serious danger of unfair prejudice that Mr. Mejia Guzman's immigration status creates.

In short, the prejudicial impact of Mr. Mejia Guzman's immigration status far outweighs any slight probative value it may have. The Court should exclude any evidence to that effect under Rule 403.

Should the Court disagree and admit evidence of Mr. Mejia Guzman's immigration history, at a minimum it should preclude the government and its witnesses from using pejorative terms like "illegal alien" or "illegal immigrant" to describe Mr. Mejia Guzman.

Courts routinely limit the language used by parties during trial under Rule 403 to avoid unfair prejudice. *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 CIV 10014 PKL, 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009) (precluding use of the term "tax haven"); *see also United States v. Robinson*, No. CR 16-98 (CKK), 2017 WL 11496732, at *2 (D.D.C. June 30, 2017) (precluding government's counsel from referring to defendant-doctor's patients as "customers"); *United States v. McCluskey*, No. CR 10-2734 JCH, 2013 WL 12330119, at *2 (D.N.M. May 20, 2013) (precluding counsel from referring to the first phase of a capital trial as the "guilt phase").

Such a step would be justified here because the terms "illegal alien" and "illegal immigrant" are far more prejudicial than those at issue in the above-cited cases. *See Abakporo v. U.S. Att'y Gen.*, No. 20-12750, 2021 WL 3598346, at *6 (11th Cir. Aug. 13, 2021) (Martin, J., concurring) ("'Alien' is increasingly recognized as an 'archaic and dehumanizing' term"); *Lloyd v. Holder*, No. 11 CIV. 3154 AT, 2013 WL 6667531 (S.D.N.Y. Dec. 17, 2013) (recognizing that the words "illegal alien" can invoke racist concepts); *Untied States v. Reyes-Castillo*, No. 2:19-CR-103-GMN-MDC, 2025 WL 1194014, at *3 (D. Nev. Apr. 23, 2025) (granting motion to preclude referring to defendant as an "illegal alien" or "illegal immigrant").

Moreover, those terms are unnecessary. The government can accurately describe Mr. Mejia Guzman's status as "unauthorized" or "undocumented." Thus, in the event that the Court allows evidence of Mr. Mejia Guzman's immigration status, it should preclude the government's attorneys and witnesses from referring to Mr. Mejia Guzman as an "illegal alien" or "illegal immigrant."

### III. Evidence of Mr. Mejia Guzman's Prior Convictions is Inadmissible under FRE 401 and FRE 404(b)

Evidence of Mr. Mejia Guzman's 2006 conviction for the infraction of Driving While Ability Impaired by Alcohol (DWAI) [1] and 2010 misdemeanor conviction of Driving While Intoxicated (DWI)[2] is inadmissible. At the outset, the government's arguments for admission defy logic and strain credulity. The most recent of these convictions is over 15 years old, while the oldest one dates back close to two decades. The government asserts that the prior convictions are relevant to the charged conduct at issue and that Mr. Mejia Guzman's prior convictions should come in under Federal Rule of Evidence 404(b) to show that he is "knowledgeable of his general obligations as a legal driver." *See* ECF No. 18 at 18.

First, this evidence does not even meet the low standard for relevance under Federal Rule of Evidence (FRE) 401. FRE 401 states that evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence to determining the legal action."

---

[1] Driving While Ability Impaired by Alcohol is a traffic infraction and not a crime. In New York State, is codified in Vehicle and Traffic Law § 1192.1 with the maximum jail term being 15 days.
[2] Driving While Intoxicated is an unclassified misdemeanor. In New York State, is codified in Vehicle and Traffic Law § 1192.3 with the maximum jail term being 1 year.

Mr. Mejia Guzman's prior convictions have no probative value, and they are certainly of no consequence to determining whether Mr. Mejia Guzman is guilty the charges on the indictment. Those prior convictions were a traffic infraction and a misdemeanor involving drinking and driving, incidents that have nothing to do with the facts of this case. The government is not contending Mr. Mejia Guzman was driving drunk when he was stopped or that he violated the vehicle and traffic law. His charges here stem from an unlawful traffic stop and seizure, which is the subject of the defendant's pending motion to suppress. Law enforcement agents unlawfully stopped Mr. Mejia Guzman while looking for another person who was the subject of an immigration administrative warrant. The fact that Mr. Mejia Guzman had prior contacts with the criminal justice system for driving while intoxicated doesn't tend to prove or disprove any material fact in this case.

The government also argues that Mr. Mejia Guzman's priors should come under Federal Rule of Evidence 404(b), to show his knowledge, motive, and intent. Yet, the government makes no claims about motive and intent. Instead, it asserts that these prior convictions show Mr. Mr. Mejia Guzman to be "knowledgeable of his general obligations as a legal driver" and that knew of the consequences of disobeying the law. But the government fails to explain how either category of knowledge helps it to prove this case. Indeed, if "knowledge of the consequences of disobeying the law" were a justification for admitting priors, then **every** past conviction would be admissible, notwithstanding Rule 404. The government is simply pulling at straws to try to get propensity evidence in front of the jury.

The only authority that the government cites in its argument for admission is a case where the government was seeking to introduce evidence of the defendant's prior conduct abusing children in a case where he was charged with sexual enticement of a minor. *See United States v. Wager*, 651 F. Supp. 3d 594, 597 (N.D.N.Y. 2023). The baseline rule for admissibility of prior-act evidence in sexual assault and child molestation cases" is different than in other cases. *See id.* at 599-600 (*citing United States v. Vickers*, 708 F. App'x 732, 736 (2d. Cir. 2017) (summary order)). Congress broadened the admissibility of prior-act evidence in sex-crimes by enacting Federal Rules of Evidence 413, 414, and 415, as part of the Violent Crime Control and Law Enforcement Act of 1994. *Wager*, 561 F. Supp. 3d at 600 (*citing United States v. Larson*, 112 F.3d 600, 604 (2d. Cir. 1997). Those three rules operate as exceptions to FRE 404(b)'s general ban on the use of propensity evidence. *Wager*, 561 F. Supp. 3d at 600. Since none of them are applicable here, the government's citation is uninformative.

Lastly, even if the Court rules that Mr. Mejia prior convictions somehow fall under FRE 404(b), the evidence does not meet the balancing test of FRE 403. The probative value of this evidence is substantially outweighed by the prejudice it will cause the defendant and the confusion that it produce. It may well distract the jury from what really is at issue and mislead them to return a verdict based on his prior criminal conduct. *See Huddleston v. United States*, 485 U.S. 681, 691-92 (1988); *United States v. Rutkoske*, 506 F.3d 170, 176-77 (2d Cir. 2007); *United States v. Kahale*, 789 F. Supp. 2d 560, 564 (E.D.N.Y. 2007) (Glasser, J.).

### IV. The Admissibility of Mr. Mejia Guzman's Statements as Part of the Government's Case is Subject to Rules 401 and 403

As an initial matter, Mr. Mejia Guzman challenges the admissibility of his statements for the reasons set forth in the defendant's pending motion to suppress. However, assuming for the purpose of this response that the Court denies the defendant's motion, their admissibility should be limited subject to Rules 401 and 403.

Mr. Mejia Guzman does not contest Point II of the government's motions *in limine* to the extent that it states a basic rule of evidence: a defendant's statements are sometimes admissible against him under Federal Rule of Evidence 801(d)(2)(A).[3]

However, Rule 801(d)(2)(A) does not give the government blanket permission to introduce any statement by Mr. Mejia Guzman. It simply provides that those statements are not hearsay. The ultimate admissibility of each statement still turns on Rules 401 and 402 (relevance), Rule 403 (undue prejudice), and Rule 404 (character evidence).

The government specifically seeks to introduce the following statements (*see* ECF No. 18 at 18-19):

(1) Mr. Mejia Guzman confirming his name and date of birth;

(2) Mr. Mejia Guzman admitting to illegally entering the United States;

(3) Mr. Mejia Guzman admitting to being a Honduran citizen;

(4) Mr. Mejia Guzman admitting to having no legal status in the U.S.; and

(5) Mr. Mejia Guzman admitting to having prior DWI convictions.

---

[3] Mr. Mejia Guzman continues to maintain that the entirety of his statement is inadmissible as the tainted fruit of his illegal arrest.

The first of these statements—Mr. Mejia Guzman's name and date of birth—is certainly admissible. But the remaining four each violate Rules 401-404.

For the reasons et forth above, statements (2), (4) and (5) are inadmissible pursuant to Rule 403 and 404. As for statement (3), that Mr. Mejia Guzman is from Honduras, "a jury cannot consider a defendant's … national origin in reaching a verdict. *See, e.g., United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1046 (7th Cir. 2013); *see also United States v. Smith*, 995 F.3d 1064, at *3 (4th Cir. 1993) (summary decision) (holding that it was "unfair" for the prosecution to introduce defendant's country of origin). In any event, that evidence has no bearing on any fact of consequence, Hondurans are not more likely than others to commit assault. Accordingly, the Court should exclude statements (2)-(5) from evidence.

## V.     Mr. Mejia Guzman May Admit Some of His Own Statements

Contrary to the government's insinuation, the Federal Rules of Evidence do not decree a total ban on a defendant's use of his own statements. The government asserts that Mr. Mejia Guzman's statements are inadmissible under Rule 801(d)(2)(A) and thus cannot be admitted into evidence. Nonetheless, these statements are admissible pursuant to hearsay exceptions annunciated in Rules 803-04 and 807 and should the government introduce only portions of Mr. Mejia Guzman's statements, pursuant to the Rule of Completeness (Rule 106).

In addition, Mr. Mejia Guzman is free to introduce his own statements for any non-hearsay purpose. *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) (a defendant's statement is not hearsay if not offered for the truth of the matter asserted).

While Mr. Mejia Guzman does not intend to introduce any specific statements at this time, he reserves the right at trial to seek admission of his statements under these well-established evidentiary rules.

### VI. Evidence Eliciting Sympathy

The government is asking this court to preclude the defense from introducing any evidence that seeks to elicit sympathy from the jury, including evidence of Mr. Mejia Guzman's personal or family circumstances. Specifically, it argues that broad evidence of Mr. Mejia Guzman's hardships, personal circumstances, and family history violates Rule 403.

Their request is overbroad and would bar Mr. Mejia Guzman from testifying about his background and family history, something that is generally allowed in criminal cases. *See United States v. Blackwell*, 853 F.2d 86, 88 (2d. Cir. 1988). In fact, during the course of the trial, it is customary for the defendant to introduce evidence concerning his background, such as information about his education and employment. *See Government of the Virgin Islands v. Grant*, 775 F.2d 508 (3d. Cir. 1985).

"Evidence which is essentially background in nature can scarcely be said to involve a disputed matter, yet it is universally offered and admitted as an aid to understanding." *Blackwell,* 853 F.2d at 88; *see also* Kenneth S. Broun et al., *McCormick on Evidence* § 185.1 (9th ed. 2025) (considerable leeway is allowed even on direct examination for proof of facts that do not bear purely on the legal issues but merely fill in the background of the narrative and give it interest, color, and lifelikeness). In fact,

government witnesses including law enforcement officers routinely testify to such background information during direct examinations.

In all the cases the government cites in their motion *in limine*, the evidence was not being used solely for background purposes. *See United States v. Miller*, 641 F. Supp. 2d 161, E.D.N.Y. 2009) (in a case where the defendant obtained a fraudulent passport, evidence that he obtained it so that he could visit his family members was inadmissible); *see also United States v. Paccione*, 949 F.2d 1182, 1201 (2d. Cir. 1991) (in mail fraud and RICO case evidence that defendant's son was born with cerebral palsy and that defendant had devoted his whole life to caring for his son was inadmissible); *United States v. Battaglia*, 2008 WL 144826, at *3 (S.D.N.Y. 2008) (evidence that defendant was an elderly man with a wife, children and grandchildren was inadmissible in a racketeering case); *United States v. Harris*, 491 F.3d 440, 447 (in case where defendant was charged for possession with intent to distribute cocaine, testimony from defendant's mother and girlfriend that he had no drugs the night in question and he lacked the demeanor of a man about to sell drugs was inadmissible because it did not concern "a pertinent trait of character").

Thus, the court should not preclude information regarding Mr. Mejia Guzman's family, personal history, or hardships. This information is not offered to elicit or invoke sympathy, but as background evidence which is universally admitted to give context, interest and color.

## VII. <u>Evidence or Argument about Government's Motives and Charging Decisions</u>

The government asks the Court to preclude evidence or argument on their motives and charging decisions asserting such evidence and argument is irrelevant to innocence or guilt. This is incorrect. Charging policies and decisions that bear on a government witness's motive and bias, are admissible evidence to impeach the witness's credibility.

The Sixth Amendment's confrontation right, "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). It includes a right of cross-examination, which provides "the principle means by which the believability of a witness and the truth of his [or her] testimony are tested." *Id.* at 316.

It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony. *See Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable") (*citing United States v. Abel*, 469 U.S. 45, 50 (1984)). The Sixth Amendment of the U.S. Constitution, through the Confrontation Clause, allows a defendant to cross examine witnesses against him for bias or motive. As such, Mr. Mejia Guzman should be able to cross examine about these issues, should they arise in this case.

## VIII. Evidence or Argument about Possible Punishment or Collateral Consequences

The government in its motion *in limine*, seeks preclusion of evidence or argument about possible punishment or collateral consequences. The defendant does not intent to offer evidence concerning possible punishment. However, evidence or argument about the collateral consequences Mr. Mejia Guzman faces if convicted are inextricably intertwined with the issue of immigration. The government is asking the court to admit evidence of Mr. Mejia Guzman's immigration status but asking for preclusion of collateral consequences related to his immigration status. The government cannot have it both ways.

In its original motion, the government cites cases like *United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992), to support their argument that juries are not to consider a verdict's consequences. However, all but one of those decisions refer to possible sentences, not immigration consequences. The only decision regarding the admissibility of immigration consequences the government cites is *United States v. Del Rosario*, 2012 WL 2354245, at *2 (S.D.N.Y. 2012). In that case the defendant was charged with being part of a conspiracy to distribute heroin. *Id.* at *1. The *Del Rosario* court not only precluded evidence of collateral consequences of deportation, but it explicitly stated that "any references to punishment and/or immigration status are precluded." *Id.* at *7. *Del Rosario* is simply not applicable to Mr. Mejia Guzman's case. If the government is allowed to introduce evidence of Mr. Mejia Guzman's immigration status at trial, then

evidence concerning the potential immigration consequences will naturally be before the jury.

### IX.  Testimony and Evidence Reflecting Poorly on ICE Should be Allowed

The Court should not preclude evidence or argument regarding ICE policies. Although a trial is not the forum for political opinions about ICE's role in society, the government has cited no authority for excluding cross-examination about ICE policies that may reflect poorly on the agency.

For example, Mr. Mejia Guzman may seek to cross-examine the government's officers about changes in ICE policies that create pressure on them to produce arrests, or which encourage them to use more aggressive tactics in making arrests. Such evidence is relevant to several facts of consequence in this case, including (1) whether the officers announced themselves as law enforcement officers and (2) whether they used excessive force in their efforts to arrest Mr. Mejia Guzman. *See Floyd v. City of New York*, 959 F. Supp. 2d 540, 591-602 (S.D.N.Y. 2013) (department pressure to increase number of stop-and-frisks made more likely that NYPD was engaging in unconstitutional seizures); *Heron v. City of Philadelphia*, 987 F. Supp. 400, 404 (E.D. Pa. 1997) (written department policy created a fact issue as to whether city had a custom of arresting individuals without probable cause).

ICE's policy shifts might similarly produce impeachment evidence. To the extent that ICE officers are facing increased pressure to produce arrests, convictions, and removals, jurors may well believe that these officers have a motive to lie or embellish the circumstances surrounding Mr. Mejia Guzman's arrest. After all, the ICE officers in

arrested the wrong person and failed to locate the target of the administrative warrant. The jury is certainly entitled to know whether ICE is providing its officers with a motive to fabricate. *See, e.g.*, *United States v. Salem*, 578 F.3d 682, 686 (7th Cir. 2009) ("[p]roof of … motive to lie is admissible impeachment evidence") (citing *United States v. Abel*, 469 U.S. 45 (1984)).

In sum, Mr. Mejia Guzman does not intend to offer opinions about ICE at any point during his trial. But eliciting relevant, factual information about the arresting agents knowledge of ICE policies can help the jury understand the officers' actions and motivations. This evidence and argument should be permitted.

## X.     Disclosure of Rule 16(b) Discovery

The government requests that the Court order the defense to disclose defense exhibits Mr. Mejia Guzman intends to introduce through a government's witness during cross-examination or a witness called by the defense. Their request extends to material produced by the government in discovery that the defense intends to use as an exhibit. However, the government clarifies that their request doesn't extent to documents the defense intends to use for purpose of impeachment.

The government cites a D.C. Circuit decision alongside several Eastern District of New York cases that have granted Rule 16(b) disclosure of all non-impeachment exhibits the defense intends to introduce during cross-examination of government witnesses and direct examination of defense witnesses. However, the Second Circuit has not addressed this issue, nor the issue of whether Rule 16(b) disclosure includes material produced by the government as part of their discovery obligations.

At this point, the Defense doesn't intent to introduce any exhibit in our case-in-chief that has not been previously provided as part of the government's discovery obligations. Should that change, we will provide the new materials to the government as soon as possible.

Nevertheless, we ask the court to deny the government's request to the extent that they ask for the defense to disclose exhibits that both parties already have in their possession, disclosed by the government as part of their discovery obligations. The discovery in this case is limited. There are only a handful of documents that the defense can use during cross-examination of the government's witnesses. The government's request would mean that prior to the testimony of a government witness, the defendant would have to lay bare his cross-examination strategies. This is absolutely anathema to what cross-examination is and must continue to be. A criminal defendant has no burden of proof at trial and should not be forced to give the government a preview of his cross-examination prior to trial. Furthermore, not everything in a cross-examination is planned and its not always clear what materials will be used during cross-examination until the witness gives testimony. These are instinctive trial decisions made in the moment and cannot be scripted ahead of time.

Indeed, the decisions made while cross-examining a witness, including the thoughts of a defense attorney when formulating what will aid in the defense, fall within the ambit of the work-product doctrine. *See United States v. Noble*, 422 U.S. 225 (1975) (the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case).

A defense lawyer is an officer of the court and bound to work for his client. In performing the various duties, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. *United States v. Taylor*, 329 U.S. 495, 510-11 (1947). Proper preparation demands that counsel assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. *Id*. All this is necessary so that lawyers act within the framework of our system to promote justice and attorney work-product should not be open to opposing counsel on mere demand. *See id.*

With regards to the government's request for statements by defense witnesses pursuant to Rule 26.2, the defense doesn't plan to call any witnesses other than Mr. Mejia Guzman, if he chooses to testify. Nonetheless, the defense would agree with the government in proposing that the Court order Rule 26.2 material be sent on an agreed upon date, no later than August 4, 2025, which is a week before jury selection.

Lastly, the defense would consent to an exchange of demonstrative evidence to be used during opening statements no later than August 11, 2025.

### XI. Conclusion

Mr. Mejia Guzman respectfully asks this Court to rule on the government's motions *in limine* according to the defense's arguments stated above.

DATED:    CENTRAL ISLIP, N.Y.
               July 11, 2025

                                                Respectfully submitted,

                                                _____
                                                Felipe Garcia
                                                Attorney for Mr. Mejia Guzman
                                                Federal Defenders of New York, Inc.
                                                770 Federal Plaza, Central Islip, NY, 11722
                                                (631) 712-6513