FILED
CLERK
7/28/2025 3:46 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

     -against-                              MEMORANDUM & ORDER
                                            25-CR-0174 (JS)
ANIBAL EDGARDO MEJIA GUZMAN,

                Defendant.
---------------------------------X
APPEARANCES
For United States:    Charles N. Rose, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York 11722

                      Sarah A. Elardo, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      271 Cadman Plaza East
                      Brooklyn, New York 11201

For Defendant:        Felipe A. Garcia, Esq.
                      Federal Defenders of New York
                      100 Federal Plaza, Suite 770
                      Central Islip, New York 11722
```

SEYBERT, District Judge:

Anibal Edgardo Mejia Guzman (hereafter, "Defendant") moves: (1) to suppress all physical evidence recovered from him during his April 11, 2025 arrest; (2) to suppress all statements he made to law enforcement; or, alternatively, (3) for an evidentiary hearing "to determine whether the officer's mistake in [believing Defendant was the person for whom they had a warrant] was reasonable" (hereafter, "Suppression Motion"). (Suppression Motion, ECF No. 20). The Government opposes Defendant's motion,

1

arguing suppression is unwarranted because: (1) the arresting officers had reasonable suspicion to believe Defendant was their intended target at the time of Defendant's arrest; and (2) the statements made by Defendant were made after he was lawfully arrested for assault of a police officer and after he was informed of his Miranda rights.  (Opp'n, ECF No. 24.)  The Government further argues the Court need not hold an evidentiary hearing on suppression issues, because Defendant has "not raised a material issue of fact that would necessitate one."  (Id. at 13.)

For the reasons that follow, Defendant's Suppression Motion is DENIED in its entirety.  Notwithstanding the foregoing, the Court may exclude any or all of the evidence discussed herein pursuant to the Federal Rules of Evidence and in accordance with the parties Motions In Limine (see ECF Nos. 18, 19, 25).  Per the Court's July 23, 2025 Electronic Order, the parties are directed to appear for a pre-trial hearing on their respective Motions In Limine on July 31, 2025 at 10:00am.

[Remainder of page intentionally left blank]

BACKGROUND[1]

I. Events of April 11, 2025

On April 11, 2025, Deportation Officer John Dickerson (hereafter, "Dickerson"), and Special Agent Joshua Abbensetts (hereafter, "Abbensetts"), both Immigration and Customs Enforcement (hereafter, "ICE") Officers[2], were present outside 285 Bellmont Avenue, West Hempstead, New York, conducting physical surveillance of the premises pursuant to a warrant issued against an individual other than the Defendant. (Suppression Motion at 3; Opp'n at 5.) The man who was the subject of the warrant (hereafter, the "Target") was described on his Record of Arrests and Prosecution ("RAP") Sheet as a 26-year-old Hispanic male, who is five feet ten inches tall and 160 pounds. (RAP Sheet, Ex. D, attached to Suppression Motion.) The Target is also listed as having brown eyes, black hair, and white skin. (Id.; see also Image of Target, Ex. E, attached to Suppression Motion.)

At or around 7:20 a.m., the ICE Officers observed Defendant – who is a 46-year-old Hispanic male, five feet nine inches tall, 165 pounds, with black hair, brown eyes, and a medium complexion – exit the address in question. (Suppression Motion at

---

[1] The facts are recited for the limited purpose of resolving the instant Suppression Motion and are drawn from the Indictment, the Case Docket, and the parties' submissions.

[2] Dickerson and Abbensetts are collectively referred to herein as the "ICE Officers" or the "Officers."

3

3-4; Opp'n at 5; Dep't Homeland Security Report, Ex. A, <u>attached to</u> Suppression Motion (describing Defendant's physical traits); <u>see also</u> Image of Defendant, Ex. F, <u>attached to</u> Suppression Motion.)  Defendant entered a vehicle and drove away; the ICE Officers followed in unmarked cars.  (Suppression Motion at 3; Opp'n at 5.)  After driving approximately two-and-a-half blocks, the ICE Officers pulled Defendant over for a traffic stop.  (Suppression Motion at 3; Opp'n at 5.)

The parties dispute the events that followed.  (<u>Compare</u> Suppression Motion at 3-7, <u>with</u> Opp'n at 5-7.)  The following facts are asserted by the Government.  The ICE Officers, in "clearly identifiable police" vests, (<u>see</u> Photographs of Vest, Ex. 1, <u>attached to</u> Opp'n; <u>see also</u> Ex. C, <u>attached to</u> Suppression Motion), approached Defendant's vehicle "to confirm the identity of the [T]arget and conduct the lawful administrative arrest," and "requested [D]efendant roll his window down and identify himself." (Opp'n at 6.)  When Defendant refused to comply with this command, Officer Dickerson opened the driver's side door of the vehicle. (<u>Id.</u>)  In response to Officer Dickerson's opening of the driver's side door, Defendant "grabbed the vehicle door and pulled it shut." (<u>Id.</u>)  At the same time, Officer Abbensetts "observed the [D]efendant put his foot on the break, grab the gear of his vehicle, and attempt to put the vehicle in reverse."  (<u>Id.</u>) Officer Abbensetts then "turned off the ignition to the

4

[D]efendant's vehicle. (Id.) According to the Government, "[a]s officers attempted to remove the [D]efendant from the vehicle, [Defendant] resisted" and "[Defendant] struck Dickerson in the mouth with his elbow, causing Dickerson to sustain a swollen and bloody lip." (Id.; see also Dickerson's Injury, Ex. 2, attached to Opp'n.) While being apprehended, Officer Abbensetts observed a utility knife clipped to Defendant's right-side pants pocket. (Id.; see also Image of Utility Knife, Ex. 3, attached to Opp'n.) When Officer Abbensetts attempted to remove and secure the knife, "Defendant fought with [Abbensetts] to maintain control over" the knife. (Id.) In response to the struggle over the knife, Officer Dickerson "used his service-issued taser to attempt to incapacitate the [D]efendant, but failed to make contact with the [D]efendant's skin and was unsuccessful in restraining the [D]efendant." (Id.) Officer Abbensetts ultimately retrieved the knife, and Defendant was placed under arrest. (Id.)

The following facts concerning Defendant's arrest are asserted by Defendant. Defendant was pulled over by ICE Officers in front of 162 Broadway in West Hempstead. (Suppression Motion at 6.) The ICE Officers approached Defendant's vehicle, with one Officer on each side. (Id.) The ICE Officers informed Defendant that they had a warrant and opened the driver and passenger doors. (Id.) The ICE Officers did not ask Defendant for his name or to see his identification and "immediately began to effectuate an

5

arrest." (Id. at 6-7.) Defendant asked the ICE Officers to produce the warrant, but the Officers refused. (Id.) Then, the Officer "on the driver's side [of the] vehicle grabbed [Defendant's] arm and observed a utility knife in his right pants pocket." (Id.; see also Image of Utility Knife.) Defendant "was then grabbed by the [O]fficer [on] the passenger's side" of the vehicle. (Suppression Motion at 7.) "As the [O]fficers forcibly removed [D]efendant from the [vehicle,] one of them was allegedly hit in the mouth sustaining a swollen lip." (Id.) Two officers on the passenger side of the vehicle "pulled [Defendant] out of the car, threw him on the ground, and tased him." (Id.) Defendant was then handcuffed and the Officers took Defendant's utility knife. (Id.) The ICE Officers then found Defendant's identification card which listed his true name and age, indicating he was not subject to the arrest warrant at issue. (Id.)

Following Defendant's arrest, Defendant was transported to an ICE Office located at 535 Federal Plaza in Central Islip, New York. (Id. at 7; Opp'n at 7.) Defendant was informed of his Miranda rights by Deportation Officer Efren Olivencia (hereafter, "Olivencia"), voluntarily waived such rights, and provided a statement which was memorialized by Olivencia. (Id.; see also Sworn Statement, Ex. G, attached to Suppression Motion.) Thereafter, Defendant signed the written statement, attesting to its accuracy. (Sworn Statement at 8.)

6

II. Procedural History

On May 21, 2025, a grand jury returned an indictment charging Defendant with assault of federal officers pursuant to 18 U.S.C. § 111(a)(1) and 111(b). (Indictment, ECF No. 10.) On July 15, 2025, Defendant filed the instant Suppression Motion, seeking suppression of all evidence seized from Defendant, namely, the utility knife, and suppression of the Sworn Statement made to Officer Olivencia as "fruit of the poisonous tree." (See Suppression Motion, in toto.) Alternatively, Defendant requests an evidentiary hearing on suppression. (Id.) In Opposition, the Government argues such evidence should not be suppressed because: (1) Defendant's initial investigatory stop, which uncovered the existence of the utility knife, was supported by reasonable suspicion; and (2) Defendants post-arrest statements are not "fruit of the poisonous tree" given Defendant's arrest was lawful. (See Opp'n, in toto.)

### DISCUSSION

I. Legal Standard

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV; see also United States v. Weaver, 9 F.4th 129, 138 (2d Cir. 2021). "A warrantless arrest is unreasonable unless the arresting officer has probable cause to believe that a crime is being committed." United States v. Homer, 715 F. Supp. 3d 413, 415 (E.D.N.Y. 2024)

7

(citing Devenpeck v. Alford, 543 U.S. 146, 152 (2004)) (citation modified). "Evidence seized pursuant to an unreasonable search or seizure or evidence that is the 'fruit' of an unreasonable search or seizure must be suppressed and cannot be used in the prosecution's case in chief." United States v. McCargo, 464 F.3d 192, 196 (2d Cir. 2006).

As a general matter, searches and seizures conducted in the absence of a warrant are "presumptively unreasonable" subject to several exceptions. Id. One such exception is when law enforcement conducts a Terry stop, which is a brief investigatory stop based upon an officer's "reasonable suspicion" that "criminal activity may be afoot." Id.; see also Terry v. Ohio, 392 U.S. 1, 16 (1968). To have reasonable suspicion sufficient to conduct a brief investigatory stop, law enforcement officers must be aware of "specific and articulable facts which, taken together with rational inferences from those facts" give officers "a particularized and objective basis for suspecting wrongdoing." United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014). Notably, the reasonable suspicion standard is "not high" and can arise based upon information that is "less reliable", such as an unverified tip. Id. (citing Richards v. Wisconsin, 520 U.S. 385, 394 (1997)); Vasquez v. Maloney, 990 F.3d 232, 239 (2d Cir. 2021) (citing Alabama v. White, 496 U.S. 325, 330 (1990)). In evaluating whether reasonable suspicion existed to warrant a Terry stop, "a

8

court must evaluate the circumstances surrounding the stop 'through the eyes of a reasonable and cautious police officer on the scene guided by his experience and training'" and make "commonsense judgments and inferences about human behavior." Vasquez v. Maloney, 990 F.3d 232, 239 (2d Cir. 2021) (citation modified).

Moreover, when law enforcement has "probable cause to arrest one party, and . . . reasonably mistake[s] a second party for the first party, then the arrest of the second party is a valid arrest." Hill v. California, 401 U.S. 797, 802 (1971). Indeed, "[a] mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant." Gonzalez v. City of N.Y., 69 F. App'x 7, 9 (2d Cir. 2003); see also Martinez v. City of N.Y., 340 F. App'x 700, 701 (2d Cir. 2009) ("[A] mistaken identity can provide the basis for probable cause"); Brown v. City of N.Y., No. 10-CV-5229, 2013 WL 3245214, at *9 (E.D.N.Y. June 26, 2013) ("[I]f officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if: (1) the police had probable cause to arrest the person sought; and (2) the arresting officer reasonably believed that the arrestee was that person [for whom they had a warrant]").

9

II.  Analysis

Upon close examination of the facts and circumstances presented, the Court finds Defendant's pre-arrest investigative stop, and subsequent arrest, to be lawful, and accordingly, declines to suppress the physical evidence recovered and the post-arrest statements made by Defendant.  The Court further finds an evidentiary hearing is unwarranted.  Therefore, Defendant's Suppression Motion is denied in its entirety.[3]

A. The Initial Stop of the Defendant Was Lawful and the Utility Knife Need Not Be Suppressed

The parties agree that on the morning of April 11, 2025, ICE Officers, in possession of a valid warrant of removal against the Target, observed Defendant leaving the Target's known address, entering a vehicle, and driving away.  (Suppression Motion at 3; Opp'n at 5-6.)  According to the Exhibits submitted by Defendant, in addition to having been present at the address of the Target, Defendant generally matched the height, weight, ethnicity, eye color, and hair color of the Target.  (Compare RAP Sheet (indicating the Target was Hispanic male, five feet ten inches tall, 160 pounds, with brown eyes and black hair) with Dep't

---

[3] As stated supra, and for the avoidance of doubt, the Court retains its "wide discretion" to exclude any such evidence in accordance with the Federal Rules of Evidence and via its rulings on the parties' pending Motions In Limine.  See United States v. Robinson, 560 F.2d 507, 514 (2d Cir. 1977).

Homeland Security Report (indicating Defendant is a Hispanic male, five feet nine inches tall, 165 pounds, with brown eyes and black hair).) The only <u>potentially</u> notable physical discrepancies among Defendant and the Target are their ages and complexion. (<u>Compare</u> RAP Sheet (indicating Target is 26-years-old and "White"), <u>with</u> Dept' Homeland Security Report (indicating Defendant is 46-years-old with a "Medium" complexion).

While Defendant argues extensively in his Suppression Motion that he looks "nothing like" the Target, especially given the twenty-year age gap between them (<u>see</u> Suppression Motion at 6), the Court does not agree. In contrast, the Court finds the Defendant and the Target look strikingly similar, especially considering the vantage point of the Officers, <u>i.e.</u>, that the Officers were observing Defendant at some distance, and said observation was of a very brief nature. (<u>See</u> Suppression Motion at 3 and Opp'n at 5 (each noting surveillance was conducted outside of the residence in question and, upon being observed leaving the residence, Defendant was immediately followed by the Officers).) Indeed, given this similarity (<u>compare</u> Image of Target <u>with</u> Image of Defendant), the Officer's initial mistaken identification of Defendant as the Target was objectively reasonable in light of the aforementioned surrounding circumstances, including the fact that Defendant was present at the Target's known address, and "[w]hatever contradictory evidence may have been available to the

11

investigators," in particular, Defendant potentially having appeared older than the intended Target, is "insufficient to negate this reasonable belief." Gonzalez, 69 F. App'x at 10. Accordingly, the Court finds the investigatory stop of Defendant, during which the ICE Officers recovered a utility knife, was lawful and the utility knife need not be suppressed.

> B. Defendant's Arrest Pursuant to 18 U.S.C. § 111 Was Lawful and Defendant's Statements Need Not Be Suppressed

Defendant further argues that his statements "should be suppressed as 'fruit of the poisonous tree.'" (Suppression Motion at 14.) The Court disagrees. It is undisputed that the ICE Officers realized that Defendant was not the intended Target after the altercation between Defendant and the Officers occurred, and during which altercation Officer Dickerson sustained a "swollen and bloody lip." (See Suppression Motion at 6-7 (stating first, "[a]s the officers forcibly removed Mr. Mejia Guzman from the pickup, one of them was allegedly hit in the mouth sustaining a swollen lip" and then later stating "[Defendant] was placed in [hand]cuffs") at which time Officers "found [Defendant's] identification card listing his true name and age, reflecting he was not the subject of the administrative warrant for removal and deportation"); Opp'n at 6 (stating first, "[a]s the officers attempted to remove the [D]efendant from the vehicle, he resisted. The [D]efendant struck Dickerson in the mouth using his elbow,

12

causing Dickerson to sustain a swollen and bloody lip" and then stating "[w]hile searching the [D]efendant incident to his arrest, officers recovered a Honduran identification card bearing the [D]efendant[']s name, date of birth, and other identifiers").)

Although ICE Officers became aware of Defendants' true identity after Defendant was handcuffed, lessening the possibility that he was the Target, by this time, Defendant had already allegedly assaulted Officer Dickerson. Therefore, by the time the ICE Officers had reason to question whether Defendant was indeed the Target, the ICE Officers already possessed probable cause to arrest Defendant for the assault of Officer Dickerson.[4] Because probable cause existed to arrest Defendant, Defendant's statement, which the parties agree was made voluntarily (see Suppression Motion at 7 (stating Defendant provided a statement to the officer after "[h]e was advised of his rights"); Opp'n at 7 (same)), cannot be suppressed as "fruit of the poisonous tree."

---

[4] Nothing in this Memorandum and Order shall constitute an opinion concerning the viability of the claim brought against Defendant. That decision is to be made by the jury and the jury alone. See Erlinger v. United States, 602 U.S. 821, 830 (2024) (describing a defendant's Sixth Amendment right to an impartial jury). The Court's analysis here is limited to its view of the facts and circumstances of Defendant's arrest and whether such circumstances support the suppression of evidence.

13

C. <u>No Evidentiary Hearing Is Required</u>

In light of the foregoing, the Court finds an evidentiary hearing on suppression is not warranted because there are not "contested issues of fact going to the validity of the [arrest]." <u>United States v. Martinez</u>, 992 F. Supp. 2d 322, 325 (S.D.N.Y. 2014). Nor has Defendant submitted "an affidavit of someone alleging personal knowledge of the relevant facts" or "papers that are sufficiently definite, specific, detailed, and nonconjectural to enable a court to conclude that" there are contested issues of fact going to the validity of the search. <u>United States v. Barrios</u>, 210 F.3d 355 (2d Cir. 2000) (affirming district court decision declining to hold suppression hearing in the absence of an affidavit based upon personal knowledge or a clear "central factual question"). Therefore, Defendant's request for a suppression hearing is denied.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED, for the reasons stated herein, Defendant's Suppression Motion (ECF No. 20) is DENIED in its entirety. IT IS FURTHER ORDERED, pursuant to the Court's July 23, 2025 Electronic Order, the parties are directed to appear for a pre-trial hearing on their respective Motions <u>In Limine</u> on July 31, 2025 at 10:00am.

**SO ORDERED.**

<u>/s/ JOANNA SEYBERT</u>
Joanna Seybert, U.S.D.J.

Dated: July 28, 2025
Central Islip, New York